Ed VANEGAS, Jimmy D. Halman, Sam Armstrong, Alex Carbajal, Roger Farrington, Curtis Huff, and Tito Betancur, Petitioners,

v.

AMERICAN ENERGY SERVICES, Niewoehner Partnership, L.P., RCH/HSJ/CCM/MCPI, L.P., Autry Stephens, John Carnett, Brack Blackwood, and Dennie Martin, Respondents.

No. 07–0520.

Supreme Court of Texas.

Argued Oct. 15, 2008.

Decided Dec. 18, 2009.

Allen R. Stroder, Odessa, TX, for Petitioner.

Scott M. Kidwell, Steven C. Kiser, Billy Blue Hyatt, Harper Estes, Lynch, Chappell & Alsup, P.C., C.H. (Hal) Brockett Jr., Ryan John McNeel, Brockett & McNeel LLP, Midland, TX, Randal Patterson, Atkins, Hollmann, Jones, Peacock, Lewis & Lyon, Odessa, TX, for Respondents.

Eliot P. Tucker, Tucker, Vaughan, Gardner & Barnes, P.C., Houston, TX, for Amicus Curiae Eliot P. Tucker.

Eric Thomas Stahl, Law Offices of Frank L. Branson, P.C., Dallas, TX, for Amicus Curiae Royalton Real Estate Capital, LLC.

Justice GREEN delivered the opinion of the Court.

In this case, we are asked to decide the enforceability of an employer's alleged promise to pay five percent of the proceeds of a sale or merger of the company to employees who are still employed at the time of the sale or merger. The employer, American Energy Services (AES), argues that because these were at-will employees, any promise was illusory and therefore not enforceable—the company could have avoided the promise by firing the employees at any time. The employees respond that the promise represented a unilateral contract, and by staying on with the company until AES Acquisition, Inc. acquired AES several years later, they performed on the contract, making it enforceable. We agree with the employees; continuing their employment with the company until it was sold would constitute performance under such a unilateral contract, making the promise enforceable, regardless of whether that promise may have been con-sidered illusory at the time it was made. We therefore reverse the court of appeals' judgment and remand the case to the trial court to consider the merits.

## I

AES was formed in the summer of 1996. AES hired the petitioners in this case (collectively, the employees) that same year. The employees allege that in an operational meeting in June 1997, they voiced concerns to John Carnett, a vice president of AES, about the continued viability of the company. The employees complained that the company required them to work long hours with antiquated equipment. The employees allege that, in an effort to provide an incentive for them to stay with the company, Carnett promised the employees, who were at-will and therefore free to leave the company at any time, that "in the event of sale or merger of AES, the original [eight] employees remaining with AES at that time would get 5% of the value of any sale or merger of AES." AES Acquisition, Inc. acquired AES in 2001. Seven of the eight original employees were still with AES at the time of the acquisition. Those remaining employees demanded their proceeds, and when the company refused to pay, the employees sued, claiming AES breached the oral agreement.

AES moved for summary judgment on two grounds: that the agreement was illusory and therefore not enforceable, and that it violated the statute of frauds.[1] The employees responded that the promise represented a unilateral contract, and by remaining employed for the stated period, the employees performed, thereby making the promise enforceable. The trial court

---

1. AES has since expressly abandoned its statute of frauds defense. *See* TEX. BUS. & COM.CODE § 26.01(b)(6).

granted AES's motion for summary judgment, and the employees appealed. The court of appeals affirmed, holding that the alleged unilateral contract failed because it was not supported by at least one non-illusory promise, citing this Court's decision in *Light v. Centel Cellular Co. of Texas*, 883 S.W.2d 642, 644–45 (Tex.1994). 224 S.W.3d 544, 550 (Tex.App.-Eastland 2007). The employees petitioned this Court for review, which we granted. 51 Tex. Sup.Ct. J. 771 (Apr. 18, 2008).

## II

AES argues, and the court of appeals held, that our holdings in *Light*, 883 S.W.2d at 644–45, and *Sheshunoff v. Johnson*, 209 S.W.3d 644 (Tex.2006), dictate the result in this case. 224 S.W.3d at 553. In *Light*, we stated:

Consideration for a promise, by either the employee or the employer in an at-will employment, cannot be dependent on a period of continued employment. Such a promise would be illusory because it fails to bind the promisor who always retains the option of discontinuing employment in lieu of performance. When illusory promises are all that support a purported bilateral contract, there is no contract.

883 S.W.2d at 644–45 (citation omitted). AES and the court of appeals also relied on two footnotes from that opinion to support their position. In footnote five, we stated that "[a]ny promise made by either employer or employee that depends on an additional period of employment is illusory because it is conditioned upon something that is exclusively within the control of the promisor." *Id.* at 645 n. 5. And in footnote six, we noted "[i]f only one promise is illusory, a unilateral contract can still be formed; the non-illusory promise can serve as an offer, which the promisor who made the illusory promise can accept by performance." *Id.* at 645 n. 6.

*Light* involved an employee's challenge to a covenant not to compete. *Id.* at 643. Approximately two years after being hired, Light, an at-will employee, executed a covenant not to compete with her employer. *Id.* Relying on the Covenants Not to Compete Act, Tex. Bus. & Com.Code § 15.50(a), the employer, United Telespectrum, sought to enforce the covenant against Light after she left the company. *Id.* The Act provides that "a covenant not to compete is enforceable if it is ancillary to or part of an otherwise enforceable agreement at the time the agreement is made." Tex. Bus. & Com.Code § 15.50. We held that "[a]lthough Light and United did have an otherwise enforceable agreement between them, the covenant was not ancillary to or a part of that otherwise enforceable agreement." *Light*, 883 S.W.2d at 643. We concluded that the agreement included only three non-illusory promises: "(1) United's promise to provide 'initial ... specialized training' to Light; (2) Light's promise to provide 14 days' notice to United to terminate employment; (3) Light's promise to provide an inventory of all United property upon termination." *Id.* at 646. We held that Light's promise not to compete with her employer upon termination was not enforceable because it was not "ancillary to or a part of" the non-illusory promises; that is, the covenant not to compete was "not designed to enforce any of Light's return promises in the otherwise enforceable agreement." *Id.* at 647. We concluded that because Light's promise failed to meet the requirements of the Act, the covenant not to compete was not enforceable. *Id.* at 647–48.

We revisited the issue of illusory promises in covenants not to compete in *Sheshunoff*. In that case, an employer again sought to rely on the Covenants Not to

Compete Act to enforce a covenant against a former employee. 209 S.W.3d at 646. We reaffirmed our previous holding in *Light* that covenants not to compete in bilateral contracts must be supported by "mutual non-illusory promises." *Id.* at 649. We observed that unlike the employee in *Light,* Sheshunoff did receive promised confidential information in exchange for his promise not to disclose that information following termination. *Id.* We noted, though, that under footnote six of *Light,* this agreement would still be considered invalid because Sheshunoff was an at-will employee, and his employer could have fired him before providing him with the confidential information; therefore, the agreement was not enforceable at the time it was made, but rather it was only enforceable once they provided this information to him. *Id.* at 650. We overruled that portion of *Light*'s holding, noting that this was not the intent of the Act: "[W]e disagree with footnote six insofar as it precludes a unilateral contract made enforceable by performance from ever complying with the Act because it was not enforceable at the time it was made." *Id.* at 650–51.

■ Citing our holdings in *Light* and *Sheshunoff,* the court of appeals stated that "[a] unilateral contract may be formed when one of the parties makes only an illusory promise but the other party makes a non-illusory promise. The non-illusory promise can serve as the offer for a unilateral contract, which the promisor who made the illusory promise can accept by performance." 224 S.W.3d at 549 (citing *Sheshunoff,* 209 S.W.3d at 650, and *Light,* 883 S.W.2d at 645 n. 6). We agree with that statement, but the court of appeals erroneously applied those holdings to the current case.

■ The issue turns on the distinction between bilateral and unilateral contracts.

"A bilateral contract is one in which there are mutual promises between two parties to the contract, each party being both a promisor and a promisee." *Hutchings v. Slemons,* 141 Tex. 448, 174 S.W.2d 487, 489 (1943) (quoting RESTATEMENT (FIRST) OF CONTRACTS § 12). A unilateral contract, on the other hand, is "created by the promisor promising a benefit if the promisee performs. The contract becomes enforceable when the promisee performs." *Plano Surgery Ctr. v. New You Weight Mgmt. Ctr.,* 265 S.W.3d 496, 503 (Tex.App.-Dallas 2008, no pet.); *see also Light,* 883 S.W.2d at 645 n. 6; 1 RICHARD A. LORD, WILLISTON ON CONTRACTS § 1.17 (4th ed. 2007) ("A unilateral contract occurs when there is only one promisor and the other party accepts, not by mutual promise, but by actual performance or forbearance."). Both *Sheshunoff* and *Light* concerned *bilateral* contracts in which employers made promises in exchange for employees' promises not to compete with their companies after termination. *Sheshunoff,* 209 S.W.3d at 649 ("ASM promised to disclose confidential information and to provide specialized training under the Agreement, and Johnson promised not to disclose confidential information."); *Light,* 883 S.W.2d at 645 ("When illusory promises are all that support a purported *bilateral* contract, there is no contract.") (emphasis added). The court of appeals' explanation of these cases—describing an exchange of promises where one party makes an illusory promise and the other a non-illusory promise—describes the attempted formation of a *bilateral* contract, not a unilateral contract. 224 S.W.3d at 549. Our discussion in footnote six of *Light* was confined to situations where a non-illusory promise could salvage an otherwise ineffective bilateral contract by transforming it into a unilateral contract, enforceable upon performance. This

was not a blanket pronouncement about unilateral contracts in general.[2]

■ The court of appeals held that even if AES promised to pay the employees the five percent, that promise was illusory at the time it was made because the employees were at-will, and AES could have fired all of them prior to the acquisition. 224 S.W.3d at 549. But whether the promise was illusory at the time it was made is irrelevant; what matters is whether the promise became enforceable by the time of the breach. *See Sheshunoff*, 209 S.W.3d at 651 ("[A] unilateral contract formed when the employer performs a promise that was illusory when made can satisfy the requirements of the [Covenants Not to Compete] Act.... There is no sound reason why a unilateral contract made enforceable by performance should fail under the Act."); *see also* 2 JOSEPH M. PERILLO & HELEN HADJIYANNAKIS BENDER, CORBIN ON CONTRACTS § 6.2 (1995) ("[U]nilateral contract analysis is applicable to the employer's promise to pay a bonus or pension to an employee in case the latter continues to serve for a stated period."). Almost all unilateral contracts begin as illusory promises. Take, for instance, the classic textbook example of a unilateral contract: "I will pay you $50 if you paint my house." The offer to pay the individual to paint the house can be withdrawn at any point prior to performance. But once the individual accepts the offer by performing, the promise to pay the $50 becomes binding. The employees allege that AES made an offer to split five percent of the proceeds of the sale or merger of the company among any remaining original employees. Assuming that allegation is true, the seven remaining employees accepted this offer by remaining employed for the requested period of time. *See City of Keller v. Wilson*, 168 S.W.3d 802, 824 (Tex.2005) (holding that, in reviewing a summary judgment, we "examine the entire record in the light most favorable to the nonmovant, indulging every reasonable inference and resolving any doubts against the motion"). At that point, AES's promise became binding. AES then breached its agreement with the employees when it refused to pay the employees their five percent share.

Furthermore, the court of appeals' holding would potentially jeopardize all pension plans, vacation leave, and other forms of compensation made to at-will employees that are based on a particular term of service. *Corbin on Contracts* observed as much in discussing the court of appeals' opinion in this case:

> The court's analysis may attempt to prove too much. The argument that a promise to grant a raise to a terminable-at-will employee is necessarily illusory raises the question, why is an employer's original promise to pay a certain wage to an at-will employee enforceable when the employee performs? The court's analysis would suggest that the employer's promise was never enforceable. If an at-will employee is hired at a promised compensation and performs for

---

**2.** In fact, *Williston on Contracts* disapproves of the use of the term "unilateral contract" to describe an agreement in which one of the promises in a bilateral contract fails:

> [T]he term unilateral contract should be reserved for cases in which a legal obligation has been created, but only one party to the obligation has made a promise. When there is no obligation, the transaction may be a unilateral promise or a unilateral

offer, but it cannot properly be called a unilateral contract. Thus, for example, when the promisor seeks a return promise and obtains an illusory promise, his or her own undertaking may properly be characterized as unilateral; but since no enforceable obligation exists, it is not properly called a unilateral contract.

1 WILLISTON ON CONTRACTS § 1.17.

some period, the court's analysis would suggest that the promised rate of compensation was never enforceable.

1 JOHN E. MURRAY, JR. & TIMOTHY MURRAY, CORBIN ON CONTRACTS § 1.17 (Supp. Fall 2009). We agree that the court of appeals' opinion could have far-reaching adverse effects on well-established forms of compensation.

The fact that the employees were at-will and were already being compensated in the form of their salaries in exchange for remaining employed also does not make the promise to pay the bonus any less enforceable.

> It is now recognized that these are not pure gratuities but compensation for services rendered. The employer's promise is not enforceable when made, but the employee can accept the offer by continuing to serve as requested, even though the employee makes no promise. There is no mutuality of obligation, but there is consideration in the form of service rendered. The employee's one consideration, rendition of services, supports all of the employer's promises, to pay the salary and to pay the bonus.

2 CORBIN ON CONTRACTS § 6.2; *see also* Elizabeth T. Tsai, Annotation, *Promise By Employer to Pay Bonus as Creating Valid and Enforceable Contract*, 43 A.L.R.3d 503 (1972) (listing cases from several states upholding validity of employers' promises to pay bonuses in exchange for employees' future service). By remaining with the company, the employees gave valuable consideration. *See* 1 WILLISTON ON CONTRACTS § 1.17 ("The performance or forbearance constitutes both acceptance of a promisor's offer and consideration."). Therefore, any promise to pay sale or merger proceeds became an enforceable unilateral contract when the employees performed.

## III

AES allegedly promised to pay any remaining original employees five percent of the proceeds when AES was sold. Assuming AES did make such an offer, the seven remaining employees accepted the offer by staying with AES until the sale. Regardless of whether the promise was illusory at the time it was made, the promise became enforceable upon the employees' performance. The court of appeals erred in holding otherwise. Accordingly, we reverse the court of appeals' judgment and remand the case to the trial court for further proceedings consistent with this opinion. TEX. R.APP. P. 60.2(d).