

# IN THE
# TENTH COURT OF APPEALS

## No. 10-11-00061-CV

**KAY DAVIDSON, RICHARD MARTIN,**
**AND MICHAEL JONES,**

                                                            **Appellants**

 **v.**

**MCLENNAN COUNTY APPRAISAL DISTRICT,**
**AND BILLY HUBERT, RANDY RIGGS, JOHN**
**EMBRY, IVAN GREEN, AND ALLEN SYKES, IN**
**THEIR OFFICIAL CAPACITIES AS BOARD MEMBERS**
**OF THE MCLENNAN COUNTY APPRAISAL DISTRICT,**

                                                            **Appellees**

_____

**From the 170th District Court**
**McLennan County, Texas**
**Trial Court No. 2010-1652-4**

_____

## MEMORANDUM  OPINION

_____

Kay Davidson, Richard Martin, and Michael Jones (the Retirees) had retired from employment with the McLennan County Appraisal District (MCAD). Since their retirement, MCAD had allowed them to participate in health insurance coverage through MCAD by timely paying their own premiums. They found out in 2010 that they would no longer be allowed to participate in MCAD's health insurance program.

They brought a declaratory judgment action against MCAD and members of its Board of Directors[1] to keep MCAD from dropping them from the insurance program. They did not prevail. On appeal, Davidson and Martin, through one attorney, and Jones, through another attorney, contend the trial court erred in its judgment. We reverse and remand.

## BACKGROUND

In 1997, MCAD's Board of Directors passed Resolution 1997-1 (R 1997-1) to encourage MCAD's employees to keep working for MCAD beyond their minimum years for retirement. The reward for continued employment was the ability for the employee and his or her spouse to participate in MCAD's health insurance programs after retirement at their own expense. The resolution is set out in its entirety in Appendix A. The required term of employment was 15 continuous years with MCAD. Each of the Retirees had begun their employment with MCAD prior to the passing of R 1997-1: Davidson in 1984, Martin in 1981, and Jones in 1991.

In addition to other former employees of MCAD, the Retirees took MCAD up on this Resolution and did not retire when they originally could have retired. Davidson retired in 2009 after 25 years with MCAD, Martin retired in 2004 after 23 years with MCAD, and Jones retired in 2008 after 17 years with MCAD.

---

[1] Those members are Billy Hubert, Randy Riggs, John Embry, Ivan Green, and Allen Sykes. They, along with the McLennan County Appraisal District, are collectively referred to in this opinion as MCAD.

In 2009, at the recommendation of a new chief appraiser, MCAD rescinded R 1997-1 with Resolution 2009-20. This resolution is set out in its entirety in Appendix B. It purports to be effective immediately as to all current and future employees and effective on December 31, 2010 as to the Retirees.

The Retirees filed a declaratory judgment action requesting a declaration from the trial court that:

(1) the promises made by MCAD in R 1997-1 became enforceable unilateral contracts between MCAD and each plaintiff when each plaintiff performed the conditions set forth in R 1997-1;

(2) pursuant to R 1997-1, upon timely payment of their premiums, they were entitled to the same insurance programs as current MCAD employees, including reimbursement by MCAD for any part of the year's deductible, if such benefit is provided to current employees, until each plaintiff and/or his/her spouse reaches 65 years of age;

(3) their entitlement to the same insurance programs as current MCAD employees includes receiving the same health care benefits and paying the same amount in premiums as MCAD pays for its current employees;

(4) if MCAD secures health insurance for plaintiffs which requires monthly premiums higher than MCAD pays for its current employees or any Retirees covered by Chapter 175 of the Texas Local Government Code, the unilateral contract between plaintiffs and MCAD requires each plaintiff to pay the same monthly premium amount paid by MCAD for each of its current employees, and that MCAD must pay the difference in such monthly amount and the amount of the higher premiums secured by MCAD for plaintiffs; and

(5) R 2009-20 impairs the obligation of contract established between MCAD and plaintiffs in R 1997-1, in violation of Texas Constitution Article I, Section 16.

In addition to these declarations, the Retirees sought relief which included a permanent injunction and/or mandamus to prevent MCAD from breaching its contract

with the Retirees pursuant to R 1997-1.  After a bench trial, all relief requested by the Retirees was denied.

## ISSUE ON APPEAL

In one issue, Davidson and Martin contend the trial court erred in failing to grant the relief to which they were entitled.  To demonstrate the trial court's error, they attack various findings and conclusions made by the trial court.  In 23 issues, Jones does the same thing.  The trial court issued findings of fact and conclusions of law, but not in the traditional sense; that is, the declarations were not categorized specifically as findings of fact or conclusions of law, are not in short or declarative statements, and were not numbered.  The declarations of the trial court were made in an eight page document consisting of a series of paragraphs.  We have categorized the declarations under attack by the Retirees and have numbered them to aid us in the disposition of this appeal.

### *Standard of Review*

When a trial court issues findings of fact and conclusions of law following a bench trial, the trial court's findings of fact are reviewable for legal and factual sufficiency of the evidence by the same standards as applied in reviewing the legal and factual sufficiency of the evidence supporting a jury's finding.  *Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex. 1991).  We review the trial court's conclusions of law de novo.  *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002).  As the

reviewing court, we may review the trial court's legal conclusions drawn from the facts to determine their correctness. *Id*.

In reviewing a finding for legal sufficiency, we credit evidence that supports the finding if reasonable jurors could, and disregard contrary evidence unless reasonable jurors could not. *See Kroger Tex. Ltd. P'ship v. Suberu*, 216 S.W.3d 788, 793 (Tex. 2006); *City of Keller v. Wilson*, 168 S.W. 3d 802, 827 (Tex. 2005). In reviewing a factual sufficiency issue, the court of appeals must weigh all of the evidence in the record. *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996). Findings may be overturned only if they are so against the great weight and preponderance of the evidence as to be clearly wrong and unjust. *Id*.

**FINDINGS OF FACT**

Although not presented to us in this order, to aid the clarity of this opinion, we address the trial court's findings regarding the Texas Municipal League Intergovernmental Employee Benefits Pool first.

*TML and Group Health Insurance*

In its findings of fact and conclusions of law, the trial court found that:

(1) MCAD was unable to locate any insurance carrier willing to include the Retirees in a group health insurance plan for 2011;

(2) there was no "group health insurance" available to MCAD which would allow the Retirees to continue to participate;

(3) the Texas Municipal League Intergovernmental Employee Benefits Pool (TML) was the only source for coverage found by MCAD that would include the Retirees;

(4) TML is not an insurance company, but a risk pool, and does not provide, sell, or offer group health insurance programs; and

(5) participating in TML is significantly more expensive for MCAD as compared to participating in FirstCare without inclusion of the Retirees.[2]

The Retirees attack these findings.

R 1997-1 provided that an employee, who at the time of retirement met the stated criteria and timely paid the required premiums, would "be permitted, along with their spouse," "to continue participation in current or future group health insurance programs provided by the McLennan County Appraisal District for its employees." The Retirees argue that R 1997-1 did not limit their participation in "group health insurance" to that which is provided by an insurance company. We agree with the Retirees.

The evidence established that there was group health insurance available to MCAD which could be provided by TML and that TML provided health insurance programs. It is irrelevant that TML may not be a traditional health insurance company. R-1997-1 did not limit group health insurance programs to those provided by traditional health insurance companies; the phrase, "group health insurance programs,"

---

[2] We have numbered sequentially only the findings and conclusions we will be discussing in this opinion. The identification by numbering of the findings and conclusions is solely to assist the Court and the reader and for no other purpose or meaning.

is broad and is not defined by the resolution; and the phrase is not modified by the term, "insurance companies," or limited to programs provided by insurance companies. Although the trial court appears to have given it the more restrictive meaning of "traditional health insurance company," no testimony was presented at trial to be able to interpret the phrase "group health insurance programs" as only those programs provided by traditional health insurance companies.

There was also no testimony from the TML representative that TML was not an insurance provider; only that it was a risk pool. Even if TML was not a traditional insurance company, it provided insurance coverage. The TML representative testified at trial that over 30 years ago, TML was established by a group of municipal leaders because they were looking for a stable source of insurance coverage. TML is self-funded and stable, and members include entities such as cities, housing authorities, and appraisal districts. TML self-insures to $500,000 per claim, and above that, purchases unlimited lifetime reinsurance. Further, two insurance brokers who sought out insurance bids for MCAD healthcare coverage considered TML an insurance carrier.

TML provided a quote of $379.92 per month to MCAD for employee health insurance coverage in 2011 that included the Retirees. FirstCare, who had provided health insurance coverage for MCAD for 2009 and 2010, provided a quote of $269.74 per month for 2011 which did not include the Retirees. TML's quote is higher per month than FirstCare's quote but it is the only provider, at the time of trial, which would

include coverage for the Retirees. TML's quote was, however, the lowest per month that would also cover a Chapter 175 retiree,[3] Daisy White, who was a plaintiff in the suit against MCAD but is not a party to this appeal. And, as of the date of the trial, MCAD had not chosen a carrier for 2011 for its employees' health insurance coverage and did not have all the final quotes for its 2011 employee health insurance coverage.

Thus, the evidence is legally insufficient to support the legal significance attributed to the trial court's findings 1, 2, 4, and 5.

### CONCLUSIONS OF LAW

Rather than the declarations the Retirees wanted, what they got, in a nutshell, were conclusions from the trial court that:

(1) Any rights plaintiffs might have had after retirement to continue participation in group health insurance programs was predicated upon the anticipated continuance of R 1997-1 and was subordinate to the right of the Board to abolish, rescind or terminate R 1997-1;

(2) Plaintiffs have no vested contract rights in any benefit(s) that might be provided under R 1997-1;

(3) Plaintiffs have no vested property rights in any benefit(s) that might be provided under R 1997-1;

(4) R 2009-20 does not breach any contract rights that plaintiffs claim they had;

---

[3] Chapter 175 of the Local Government Code requires certain employing political subdivisions to provide health benefits coverage for Retirees under the group health insurance plan or group health coverage plan provided by or through the employing political subdivisions to its employees. TEX. LOC. GOV'T CODE ANN. Ch. 175 (West Supp. 2012). It applies to an employee who retires from an appraisal district on or after January 1, 2010. *Id*. § 175.001 (historical and statutory notes) (West Supp. 2012). Thus, Chapter 175 applied to Daisy White.

(5) R 2009-20 does not impair any contract rights that plaintiffs claim they had;

(6) R 2009-20 does not impair any property rights that plaintiffs claim they had;

(7) R 2009-20 is not unconstitutional;

(8) R 1997-1 does not contractually or otherwise impose any financial requirement or financial obligation on MCAD to plaintiffs;

(9) MCAD is not legally obligated or required to incur any expense or financial obligation in connection with plaintiffs being permitted, along with their spouses, upon timely payment of the required premiums by the plaintiff to continue participation in current or future group health insurance programs provided by MCAD for its employees;

(10)    If R 1997-1 creates a financial obligation on MCAD, it is a debt in violation of Article 11, Sec. 7 of the Texas Constitution and is void;

(11)    R 1997-1 purports to obligate a future board and is thus, unconstitutional and void; and

(12)    In performing tax assessing functions, one MCAD board cannot bind a future board.

*Unilateral Contract*

The Retirees argue that conclusions one through six are incorrect. These conclusions are predicated on the 1937 opinion in *City of Dallas v. Trammell*. *City of Dallas v. Trammell*, 101 S.W.2d 1009 (Tex. 1937). In *Trammell*, a retired police officer sued the City of Dallas after the City, pursuant to a statutory amendment by the Legislature, reduced the amount paid to retired employees from its pension fund. *Id*. at 1010. The Texas Supreme Court framed the question it had to decide as follows:

> Does the employee, after retirement, have a vested right to participate in the pension fund to the extent of the full amount of the monthly

installments granted to him at retirement; that is, does he have a vested right in the future installments which cannot be affected by subsequent legislation tending to diminish the amount of such installments?

*Id*. at 1011. The court answered in the negative, stating that

> [i]n our opinion, the rule that the right of a pensioner to receive monthly payments from the pension fund after retirement from service, or after his right to participate in the fund has accrued, is predicated upon the anticipated continuance of existing laws, and is subordinate to the right of the Legislature to abolish the pension system, or diminish the accrued benefits of the pensioners thereunder, is undoubtedly the sound rule to be adopted.

*Id*. at 1013.

However, *Trammel* is not applicable to the situation presented here. First, *Trammel* was a fact specific case. It dealt solely with State-created pension funds and the ability of the State Legislature to modify or abolish that fund. This case, on the other hand, pertains to a resolution passed by a governmental entity regarding health insurance coverage of certain retired employees. Further, *Trammel* is no longer the law even with regard to State-created pension funds. Article XVI, section 66 of the Texas Constitution, which was intended to protect retirement benefits of vested employees and to prohibit subsequent legislative changes that would reduce or impair these benefits, was proposed and adopted specifically to change the result of the *Trammell* decision, albeit 70 years later. Tex. Att'y Gen. Op. No. GA-0615, 2008 Tex. AG LEXIS 27, *14, 20 (2008). Accordingly, *Trammell* does not apply to this case.

The Retirees contend, and we agree, that this case is governed by the recent Texas Supreme Court opinion of *City of Houston v. Williams* and its earlier opinion in *Vanegas v. Am. Energy Servs.* *City of Houston v. Williams*, 353 S.W.3d 128 (Tex. 2011); *Vanegas v. Am. Energy Servs*, 302 S.W.3d 299 (Tex. 2009). In *Williams*, 540 former Houston Firefighters brought suit against the City alleging the wrongful underpayment of lump sums due upon termination of their employment. *Id*. at 131. Although the central issue was whether the Legislature waived immunity so that the firefighters could sue the City, an issue not raised in this case, the Court had to first determine whether the firefighters, through certain city ordinances and agreements, had a contract for goods or services that would bring their suit within the waiver of immunity provision of Section 271.152 of the Local Government Code.[4] LOC. GOV'T CODE ANN. § 271.152 (West 2005). After reviewing the law regarding unilateral contracts and recognizing that ordinances can be construed as contracts, the Court held that because the ordinances collectively constituted an offer that was communicated to the firefighters which the firefighters accepted by performance, the promise was a

---

[4] Section 271.152 provides:

> A local governmental entity that is authorized by statute or the constitution to enter into a contract and that enters into a contract subject to this subchapter waives sovereign immunity to suit for the purpose of adjudicating a claim for breach of the contract, subject to the terms and conditions of this subchapter.

*Id*. A "contract subject to this subchapter" is defined as "a written contract stating the essential terms of the agreement for providing goods or services to the local governmental entity that is properly executed on behalf of the local governmental entity." *Id*. § 271.151(2). Here, although MCAD disputes that the Retirees had a contract, it does not contend that it is immune from suit.

unilateral contract that became binding when the firefighters performed. *Williams*, 353 S.W.3d at 138.

In *Vanegas*, the Court was asked to decide the enforceability of an employer's alleged promise to pay five percent of the proceeds of a sale or merger of the company to its original employees who were still employed at the time of the sale or merger. *Vanegas*, 302 S.W.3d at 300. Again, after reviewing the law regarding unilateral contracts, the Supreme Court held that the employer's promise became enforceable upon the employee's performance of continuing their employment with the company until it was sold. *Id.* at 304.

The Retirees argue that they have a unilateral contract with MCAD which became enforceable when they continued working for MCAD until they met the terms of R 1997-1. Unlike a bilateral contract, in which both parties make mutual promises, a unilateral contract is created when a promisor promises a benefit if a promisee performs. *City of Houston v. Williams*, 353 S.W.3d 128, 135 (Tex. 2011); *Vanegas v. Am. Energy Servs.*, 302 S.W.3d 299, 303 (Tex. 2009); *Hutchings v. Slemons*, 174 S.W.2d 487, 489 (Tex. 1943) (bilateral contract). The requirement of mutuality is not met by an exchange of promises; rather, the valuable consideration contemplated in "exchange for the promise is something other than a promise," *i.e.*, performance. *Williams*, 353 S.W.3d at 136 (citing Restatement of Contracts § 12 cmt. a (1932)). A unilateral contract becomes enforceable when the promisee performs. *Vanegas*, 302 S.W.3d at 303. The Texas

Supreme Court has explained that "'[a] unilateral contract occurs when there is only one promisor and the other accepts . . . by actual performance,'" rather than by the usual mutual promises. *Id*. at 302 (quoting 1 Richard A. Lord, Williston on Contracts § 1.17 (4th ed. 2007)).

Here, MCAD, through R 1997-1, recognized that it 1) considered its loyal and dedicated employees to be among its most valuable assets; 2) had provided a retirement program for its employees through membership in the Texas County and District Retirement System; 3) wished to demonstrate its appreciation to its long tenured employees and to encourage its employees to remain in its employment for the mutual benefit of it and its employees; and 4) believed that allowing its retired employees and their spouses to continue to be covered under its group medical insurance program at the retired employee's expense would provide added incentive to employees to continue in its employment beyond the minimum number of years required for service retirement. It then promised:

> That effective January 1, 1998 each employee, who as of that date meets the following criteria will be permitted, along with their spouse, upon the timely payment of the required premiums by the employee[,] to continue participation in current or future group health insurance programs provided by the McLennan County Appraisal District for its employees.

The criteria to be met was that at the time of their retirement, the employee must be eligible for retirement under the Texas County and District Retirement Program; be covered by MCAD's group insurance program; and have had continuous service as an

employee of MCAD for 15 or more years.  MCAD does not contest that the Retirees met the resolution's criteria.  According to the resolution, the benefit of continued participation in current or future group health insurance programs would terminate on the employee's or spouse's 65th birthday, whichever is later.

By R 1997-1, MCAD, recognizing that it wanted to keep its employees for more than just a minimum term of employment and as an incentive to keep its employees beyond that minimum term, promised employees who had 15 or more years of continuous service with MCAD the benefit of continued participation, past the employee's retirement, in "current or future group health insurance programs."  It is undisputed that the Retirees in this case each continued their employment beyond the minimum number of years required for service retirement and met the other conditions of the resolution.  Thus, the Retirees accepted MCAD's promise by performance, *i.e.*, by continuing employment until they also met the terms of the resolution.

*Denial and Defense*

MCAD argues that there was no unilateral contract because there was no meeting of the minds.  However, "no meeting of the minds" has no application in a unilateral contract. *See Pace Corp. v. Jackson*, 284 S.W.2d 340, 346 (Tex. 1955).  Even if it is applicable, the determination of whether there is a meeting of the minds is based upon objective standards of what the parties said and did and not on their subjective state of

mind. *City of The Colony v. N. Tex. Mun. Water Dist.*, 272 S.W.3d 699, 720 (Tex. App.—Fort Worth 2008, pet. dism'd).

Through R 1997-1, MCAD offered the Retirees the ability to participate in group health insurance programs if they worked beyond their minimum number of years required for service retirement and until they qualified under the resolution. It is undisputed that the Retirees accepted the offer by performance. So firmly were their minds bound together as to the meaning of R 1997-1 that MCAD honored the resolution's terms for seven other former employees over a period of 12 years before the new chief appraiser, who started with MCAD in 2009, recommended rescission of the resolution. Those former employees and the time they participated in the health insurance program provided by R 1997-1 are set out in Appendix C. Accordingly, objectively there was a meeting of the minds between the parties. The subjective beliefs of a board member and a former chief appraiser of MCAD as to whether or not it would cost MCAD any money to perform once the offer was accepted do not factor into the analysis of whether there was a meeting of the minds.

MCAD also contends that it was excused from performing due to the doctrine of impossibility or impracticability. According to this doctrine, where a party's performance is made impracticable by the occurrence of an event the non-occurrence of which was a basic assumption on which the contract was made, the party's duty to render that performance is discharged. *Centex Corp. v. Dalton*, 840 S.W.2d 952, 954 (Tex.

1992) (citing RESTATEMENT (SECOND) OF CONTRACTS § 261 (1981)). The event which MCAD alleges made its performance impractical was its inability to locate a group health insurance company that would insure both the active and retired employees. As was discussed earlier, TML offered health care coverage for both the active employees and the Retirees. As previously discussed, that TML may not have been a traditional insurance company is irrelevant. MCAD's performance was not excused by impossibility or impracticability.

*Conclusion*

R 1997-1 was a unilateral contract that became enforceable when the Retirees each accepted MCAD's promise by performing. The trial court's conclusions one through six are erroneous.

*Debt*

The Retirees next complain about the trial court's conclusion that, even though it believed R 1997-1 did not create any financial obligation on the part of MCAD, to the extent that the resolution does create a financial obligation, it is void because it creates a debt in violation of the Texas Constitution. The trial court went on to specifically conclude that requiring MCAD to participate in TML so that the Retirees could

"continue" under R 1997-1 would create a debt under article XI, section 7 of the Texas Constitution without the conditions of article XI, section 7 being met.[5]

Article XI, Section 7 provides:

All counties and cities bordering on the coast of the Gulf of Mexico are hereby authorized upon a vote of the majority of the qualified voters voting thereon at an election called for such purpose to levy and collect such tax for construction of sea walls, breakwaters, or sanitary purposes, as may now or may hereafter be authorized by law, and may create a debt for such works and issue bonds in evidence thereof. *But no debt for any purpose shall ever be incurred in any manner by any city or county unless provision is made, at the time of creating the same, for levying and collecting a sufficient tax to pay the interest thereon and provide at least two per cent (2%) as a sinking fund, except as provided by Subsection (b); and the condemnation of the right of way for the erection of such works shall be fully provided for.*

TEX. CONST. ART. XI, § 7. (Emphasis added). It is this last sentence that is the source of the trial court's conclusion.

We construe Texas constitutional provisions in the same manner as we construe statutes. *Harris County Hosp. Dist. v. Tomball Reg'l Hosp.*, 283 S.W.3d 838, 842 (Tex. 2009); *Doody v. Ameriquest Mortgage Co.*, 49 S.W.3d 342, 344 (Tex. 2001). The guiding rule is to discern and give effect to the intent (or purpose) of the provision's drafters. *Harris County Hosp. Dist.*, 283 S.W.3d at 842; *City of El Paso v. El Paso Cmty. Coll. Dist.*, 729 S.W.2d 296, 298 (Tex. 1986). We rely heavily on the literal text of a constitutional provision to give effect to its plain language. *Harris County Hosp. Dist.*, 283 S.W.3d at

---

[5] By this opinion we do not hold that MCAD must utilize TML. The bid process had not closed for 2011 at the time of trial and another year has begun. This presents additional issues not presented in the original proceeding which must be dealt with on remand and which also impairs our ability to render a dispositive judgment.

842; *Doody*, 49 S.W.3d at 344. If the plain language of a constitutional provision is clear and unambiguous, resort to extrinsic aids and rules of construction is inappropriate, and we give the language of the provision its common everyday meaning. *City of Rockwall v. Hughes*, 246 S.W.3d 621, 625-26 (Tex. 2008); *State v. Shumake*, 199 S.W.3d 279, 284 (Tex. 2006). This rule provides an objective guidepost to discern the drafter's intent and ensures that ordinary citizens may "rely on the plain language . . . to mean what it says." *Fitzgerald v. Advanced Spine Fixation Sys., Inc.*, 996 S.W.2d 864, 866 (Tex. 1999).

Assuming without deciding that Art. XI, § 7 generally applies to this particular situation, R 1997-1 is not a debt within the meaning of the Constitution. *See McNeal v. City Of Waco*, 33 S.W. 322, 324 (Tex. 1895) ("debt" as used in the Constitution means "any pecuniary obligation imposed by contract…."). MCAD's payment of health insurance premiums for active employees was a matter of ordinary expenditure. *Id.* The premium expense for active employees' insurance benefits was budgeted for each year by MCAD. The Retirees in this case paid their own insurance premiums. The possibility that the premiums for active employees may be higher when the Retirees are included in the group health insurance program is of no constitutional consequence.[6] Conclusion 10 is erroneous.

---

[6] At the time of trial, TML was the only entity to provide a quote for health insurance coverage which included the Retirees and the bid process had not closed. Like most premiums for group insurance, the quote was based on the claims expenses MCAD had for the previous year.

*Obligate a Future Board*

Next, the Retirees take issue with conclusions 11 and 12 that R 1997-1 purports to obligate a future board and is thus, unconstitutional and void; and that in performing "tax assessing functions," one MCAD board cannot bind a future board. This concept of not obligating or binding a future board in performing its governmental functions is referred to as the "reserved powers doctrine." As the Texas Supreme Court has explained about this doctrine,

> Certain powers are conferred on government entities "for public purposes, and can neither be delegated nor bartered away." *Jasper*, 189 S.W.2d at 698. Government entities cannot "cede . . . away [such powers] through contracts with others so as to disable them from the performance of their public duties." *Id.*; *see also Brenham v. Brenham Water Co.*, 67 Tex. 542, 4 S.W. 143, 149 (Tex. 1887) ("[Municipal] corporations may make authorized contracts, but they have no power, as a party, to make contracts or pass bylaws which shall cede away, control or embarrass their legislative or governmental powers, or which shall disable them from performing their public duties.").

*Kirby Lake Dev., Ltd. v. Clear Lake City Water Auth.*, 320 S.W.3d 829, 843 (Tex. 2010).

In *Kirby Lake*, the Clear Lake City Water Authority argued that previous agreements with Kirby Lake violated the reserved powers doctrine because the agreements imposed an ongoing obligation to submit bond proposals in future bond elections, such being the exercise of the Water Authority's political power. *Id*. The Supreme Court, however, held that the doctrine did not apply because 1) the Water Authority did not contract to bargain away a future power but contracted to pay invoices if and when funds become available through a bond election, and because 2) a

contractual obligation to include a bond reimbursement proposition in future elections does not affect the performance of the Water Authority's public duties, such as the manner in which it holds elections or its power to determine how and to whom it will extend water services. *Id*.

The Retirees argue that this case is controlled by *Kirby Lake*. MCAD disagrees and argues that this case is more like, and is thus controlled by, the Texas Supreme Court's decision in *Clear Lake City Water Authority v. Clear Lake Utilities Company*, 549 S.W.2d 384 (Tex. 1977). In *Clear Lake*, the Water Authority had the governmental power, the "public duty," to determine whether, on any particular date, it would be in the best interests of all of its customers and the public in general, to extend water and sewer service to a particular person or entity. *Id*. at 392. The agreement at issue between the Water Authority and the Utilities obligated the Water Authority to meet all water and sewage treatment needs for Utilities and precluded the Water Authority from extending these services directly to a certain group of landowners, under terms and rates that it deemed best. *Id*. The Texas Supreme Court found that by the agreement, the Water Authority had attempted to bargain away its governmental power to determine "whether, on any particular date, it is in the best interests of all of its customers and the public in general, to extend water and sewer service to a particular person or entity." *Id*.

We believe the situation presented here is more like *Kirby Lake* rather than *Clear Lake*. Generally, an appraisal district "is responsible for appraising property in the

district for ad valorem tax purposes of each taxing unit that imposes ad valorem taxes on property in the district." TEX. TAX CODE ANN. § 6.01(b) (West 2008). R 1997-1 in no way bargains away MCAD's ability to appraise property. In this context, the contract with the Retirees does not, in any way, prohibit MCAD from performing its public duties. Accordingly, conclusions 11 and 12 are erroneous.

*Financial Obligation*

The trial court also concluded:

(13)    MCAD is not legally obligated to incur any expense or financial obligation in connection with the Retirees being permitted to continue participation in current or future group health insurance programs provided to MCAD's employees;

(14)    becoming a member of TML and incurring expense to permit continued participation in something that is not a group health insurance program is not required by R 1997-1; and

(15)    if the Retirees contend R 1997-1 contractually imposes any financial obligation on MCAD, they are incorrect.

By its conclusions, the trial court has determined, and MCAD has, in effect, argued, that it would be unlawful for MCAD's budget to fluctuate because of or be affected by R 1997-1. There is nothing in the record to support this determination. Also by its conclusions, the trial court has determined that R 1997-1 created some expense or "financial obligation" above and beyond MCAD's ordinary expenditures to be included in its budget. There is nothing in the record to support this determination. Further, we

have already held that R 1997-1 was not limited to traditional health insurance companies.[7]

R 1997-1 was a unilateral contract that became enforceable when the Retirees each accepted MCAD's promise by performing. Once the Retirees performed, MCAD became obligated to provide them with the ability to participate in current or future group health insurance programs if they timely paid the premiums. It does not require MCAD to provide any health insurance programs but does require that if MCAD provides a health insurance program for active employees, it must provide the same benefit to its qualifying former employees. The Retirees had always timely paid their premiums. MCAD paid their active employees' healthcare premiums which had been the same amount as the Retirees' premiums. Health care premiums had fluctuated through the years. In 2008, the health care premium was $363.15. In 2009, the premium dropped to $251.75, and in 2010, it rose to $272.91. And, just as premiums fluctuated, so did MCAD's budget.

Accordingly, the trial court's conclusions 13 through 15 are erroneous.

## CONCLUSION

To the extent the challenged findings and conclusions are insufficient or erroneous, Davidson's and Martin's sole issue and Jones's issues one through nine and fourteen are sustained. Because of our disposition of these issues, we find it

---

[7] See Footnote 5 that by this opinion we do not hold MCAD must contract with TML.

unnecessary to address the remainder of the issues presented for review. TEX. R. APP. P. 47.1.[8]

The trial court's judgment is reversed and this case is remanded to the trial court for further proceedings.


TOM GRAY
Chief Justice

Before Chief Justice Gray,
    Justice Davis, and
    Justice Scoggins
Reversed and remanded
Opinion delivered and filed August 30, 2012
[CV06]

---

[8] There are a number of Jones's issues that are inadequately briefed; but given our disposition of the controlling issues, that shortcoming has no effect on our judgment.

APPENDIX A


NO. 1997-1



WHEREAS, the McLennan County Appraisal District considers its loyal and dedicated employees to be among its most valuable assets; and,

WHEREAS, the McLennan County Appraisal District has provided a retirement program for its employees through membership in the Texas County and District Retirement System; and,

WHEREAS, the McLennan County Appraisal District wishes to demonstrate its appreciation to its long tenured employees and to encourage its employees to remain in its employment for the mutual benefit of the appraisal district and its employees; and,

WHEREAS, the McLennan County Appraisal District believes that allowing its retired employees and their spouses to continue to be covered under its group medical insurance program at the retired employee's expense would provide added incentive to employees to continue in its employment beyond the minimum number of years required for service retirement,

NOW, THEREFORE BE IT RESOLVED BY THE BOARD OF DIRECTORS OF THE McLENNAN COUNTY APPRAISAL DISTRICT:

That effective January 1, 1998 each employee, who as of that date meets the following criteria will be permitted, along with their spouse, upon the timely payment of the required premiums by the employee to continue participation in current or future group health insurance programs provided by the McLennan County Appraisal District for its employees.

Each employee must at the time of their retirement:

a. Be eligible for retirement under the Texas County and District Retirement Program;

b. Be covered by the McLennan County Appraisal District's group insurance program;

c. Have had continuous service as an employee of the McLennan County Appraisal District of fifteen (15) years or more; and,

d. This benefit will terminate on the employee's or spouse's sixty-fifth birthday whichever is later.

That it is hereby officially found and determined that the meeting at which this resolution is passed is open to the public as required by law and that public notice of the time, place, and purpose of said meeting was given as required.

PASSED AND APPROVED this 4TH day of JUNE, 1997.


/s/
Rhea Cromwell, Chairman
McLennan County Appraisal District

ATTEST:


/s/
Rick Smith, Secretary

APPENDIX B


RESOLUTION NO. 2009-20


WHEREAS, the Board of Directors of the McLennan County Appraisal District had previously adopted Resolution 1997-1, which allowed certain retirees from the McLennan County Appraisal District to participate in the appraisal district's group medical insurance policy, and;

WHEREAS, the Board of Directors of the McLennan County Appraisal District has determined that increased costs in providing group medical insurance to the employees of the appraisal district has made it financially infeasible to continue to extend this benefit, and;

WHEREAS, the Board of Directors of the McLennan County Appraisal District believes that to continue to extend to its retirees the option to participate in the appraisal district's group medical insurance policy may jeopardize the ability of the appraisal district and the taxing units that support the appraisal district to provide group health insurance and otherwise adequately compensate the current employees of the appraisal district, and;

WHEREAS, the Board of Directors of the McLennan County Appraisal District has determined that it would be in the public interest to terminate the option previously provided to its retirees to participate in the appraisal district's group health insurance policy,

NOW, THEREFORE, BE IT RESOLVED BY THE BOARD OF DIRECTORS OF THE McLENNAN COUNTY APPRAISAL DISTRICT:

That effective immediately upon approval of this Resolution 2009-20, the option granted to retirees of the McLennan County Appraisal District to participate in the appraisal district's group medical insurance policy as provided for in Resolution 1997-1 is terminated and is no longer of force and effect as to all current and future employees of the McLennan County Appraisal District and as to all existing retirees of the McLennan County Appraisal District that are not as of the date of this Resolution 2009-20 currently participating in the McLennan County Appraisal District's group medical insurance policy.

That effective December 31, 2010, the option granted to retirees of the McLennan County Appraisal District to participate in the appraisal District's group medical insurance policy as provided for in Resolution 1997-1 shall terminate and be of no force

and effect as to retirees that as of the date of this Resolution 2009-20 are participating in the appraisal district's group medical insurance policy.

That it is officially found and determined that the meeting at which this Resolution is passed is open to the public as required by law and that public notice of time, place, and purpose of said meeting was given as required.

RESOLVED, this the 2 day of December, 2009

_____/s/_____
Billy Hubert, Chairman
Board of Directors


ATTEST:


_____/s/_____
Randy Riggs, Secretary
McLennan County Appraisal District

## APPENDIX C

## PRIOR RETIREE HEALTH ELECTION WITH MCCAD

| Name | DOB | Start date | Years of Service as of 1998 | Break in service? | Date of retirement | How long they participated in the program |
|---|---|---|---|---|---|---|
| ALVIN ADAMS | 5/20/1938 | 2/8/1982 | 16 YEARS | NA | 1/31/2001 | 2 YRS 4 MNTS (REACHED 65) |
| MAROLYN CORBIN | 7/27/1940 | 10/1/1981 | 17 YEARS | NA | 2/28/2003 | 2 YRS 4 MTHS (REACHED 65) |
| DIANNA CUMMINGS | 6/29/1946 | 6/17/1985 | 13 YEARS | NA | 2/16/2007 | 5 MTHS-DECEASED |
| DIANE FEHLER | 3/10/1946 | 10/1/1981 | 17 YEARS | NA | 1/31/2007 | 9 MTS |
| SADIE HILL | 8/2/1937 | 10/1/1981 | 17 YEARS | NA | 6/19/1998 | 4 YRS 4 MTHS (REACHED 65) |
| KYTHA RIVAS | 11/8/1951 | 9/21/1981 | 24 YEARS | NA | 7/8/2005 | 2 MTHS |
| SHIRLEY YARBROUGH | 7/23/1943 | 10/1/1981 | 17 YEARS | NA | 1/31/2001 | 7 YRS 7 MTHS (REACHED 65) |