

**NUMBER 13-16-00577-CV**

**COURT OF APPEALS**

**THIRTEENTH DISTRICT OF TEXAS**

**CORPUS CHRISTI - EDINBURG**

---

JESSE DIAZ,                                                              Appellant,

v.

CITY OF ELSA, TEXAS,                                                     Appellee.

---

**On appeal from the 398th District Court
of Hidalgo County, Texas.**

---

# MEMORANDUM OPINION
**Before Justices Contreras, Benavides, and Longoria
Memorandum Opinion by Justice Benavides**

This is an appeal from an order granting a plea to the jurisdiction in favor of appellee, the City of Elsa, Texas (the City of Elsa, Elsa, or the City). By one issue, appellant Jesse Diaz asserts that the trial court erred by granting the plea. We reverse and remand.

## I.  BACKGROUND

The following facts were gleaned from the record before us:  Jesse Diaz became Elsa Police Department's warrants officer in April 2010.  Later that year, the Elsa Police Department's Chief of Police position became vacant due to a credentialing issue with the prior chief.  Elsa's city manager at the time, Mike Mesa, advised the mayor and other city council members of the vacancy and recommended Diaz for the position.  According to Mesa, the mayor and council members told him to "go ahead" and appoint Diaz to the position.

Mesa testified that he notified Diaz of the forthcoming appointment, but Diaz expressed concern of the temporary nature of the appointment.  According to Mesa, Diaz's specific concern was that if he did not ultimately become the permanent chief of the department, he did not want to lose his previous job as warrants officer.  Mesa then took Diaz's concerns back to the mayor and two council members and explained that Diaz was willing to take the chief position, so long as he could return to his previous position if he did not ultimately become the permanent chief of police.  Mesa stated that the mayor and two city council members acquiesced and told him "that's fine, go ahead." Following this conversation, Mesa sent the following correspondence (the Mesa Letter) on official City of Elsa letterhead to Diaz:

> To:        Jesse Diaz, Warrants Officer
> From:     Mike Mesa, City Manager [initialed by Mesa]
> Date:      12/7/10
> Subj:      Appointment to Chief Position
>
> Officer Diaz, after reviewing your law enforcement credentials and evaluating your performance here at the City of Elsa, I am pleased to appoint you to the position of interim Chief of Police.  This appointment is effective

immediately. Your pay will be increased to the current budgeted salary afforded to the chief of police position. I expect to open the chief of police position within the next 60 days and I welcome you to formally apply. If, however, you are not selected as the permanent chief, you will assume your former position of warrants officer and your pay will be re-adjusted to that level. Good luck.

> Xc: [Illegible due to copy] Castillo, Mayor
> Elsa City Council Members
> Personnel file

Mesa testified that he had informally obtained approval from the city council by polling them individually prior to sending the above-referenced correspondence to Diaz.

Diaz then assumed the role of interim police chief for Elsa with a readjusted salary to match his new position. However, a few months later, Diaz received the following memorandum on official city letterhead from Juan Cedillo, Elsa's new city manager at the time:

> TO: Jesse Diaz, Interim Chief of Police
> FROM: JUAN CEDILLO, City Manager [initialed by Cedillo]
> RE: Termination of Employment
> DATE: MAY 26, 2011
>
> ********************************************************************************
>
> It is with deep regret that I write to inform you that I am removing you as Interim Chief of Police with the City of Elsa Police Department effective Friday, May 27, 2011.
>
> I understand you had [a] written agreement with the previous City Manager Mike Mesa. However, at this time, I do not have a position for you; therefore, I am terminating your employment.
>
> Please turn in all City issued property to the City Secretary. You will be paid all your accrued benefits, if any, with your final payroll check which will be available for you to pick up on June 3, 2011.
>
> If I can provide you with any reference for future employment, please do not hesitate to contact my office.
>
> Best wishes in your future endeavors.

Cedillo testified he himself was terminated as Elsa's city manager a month after writing that memorandum to Diaz. Cedillo further testified that Diaz had a written contract with the City of Elsa regarding his employment as the police chief. During his deposition, Cedillo acknowledged that he understood the terms stated in the Mesa Letter, including that Diaz would return to his previous position as warrants officer if he was terminated as interim police chief. Cedillo also testified that all the city council members were "well aware" of the City's agreement with Diaz as articulated in the Mesa Letter. Additionally, Cedillo testified that it was within his authority as city manager—and likewise within Mesa's prior authority in December 2010—to make such agreements with Diaz.

Diaz subsequently sued the City of Elsa alleging, among other things, that he and the City of Elsa had entered into an employment agreement vis a vis the Mesa Letter, and that the City of Elsa breached such agreement, resulting in damages. Elsa filed a plea to the jurisdiction alleging that the City was immune from suit and no valid waiver of immunity exists. The trial court granted the City's plea, and this appeal followed.

## II. PLEA TO THE JURISDICTION

By his sole issue, Diaz asserts that the trial court erred by granting the City's plea to the jurisdiction.

### A. Standard of Review

Whether a court has subject matter jurisdiction is a question of law subject to de novo review. *Tex. Nat. Res. Conserv Comm'n v. IT-Davy*, 74 S.W.3d 849, 855 (Tex. 2002). Whether a plaintiff has alleged facts that affirmatively demonstrate a trial court's subject matter jurisdiction is a question of law that we review de novo. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). Whether undisputed evidence of

4

jurisdictional facts establishes a trial court's jurisdiction is also a question of law. *Id.* However, disputed evidence of jurisdictional facts that also implicate the merits of the case may require resolution by the finder of fact. *Id.*

We construe the pleadings liberally in favor of the plaintiffs and look to the pleaders' intent. *Id.* If the pleadings do not contain sufficient facts to affirmatively demonstrate the trial court's jurisdiction but do not affirmatively demonstrate incurable defects in jurisdiction, the issue is one of pleading sufficiency and the plaintiffs should be afforded the opportunity to amend. *Id.* at 226–27. If the pleadings affirmatively negate the existence of jurisdiction, then a plea to the jurisdiction may be granted without allowing the plaintiffs an opportunity to amend. *Id.* at 227.

If a plea to the jurisdiction challenges the existence of jurisdictional facts, we consider relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues raised, as the trial court is required to do. *Id.* When the consideration of a trial court's subject matter jurisdiction requires the examination of evidence, the trial court exercises its discretion in deciding whether the jurisdictional determination should be made at a preliminary hearing or await fuller development of the case, mindful that this determination must be made as soon as practicable. *Id.* In a case in which the jurisdictional challenge implicates the merits of the plaintiff's cause of action and the plea to the jurisdiction includes evidence, the trial court reviews the relevant evidence to determine if a fact issue exists. *Id.* If the evidence creates a fact question regarding the jurisdictional issue, then the trial court cannot grant the plea to the jurisdiction, and the fact issue will be resolved by the fact finder. *Id.* at 227–28. This procedure generally mirrors that of a summary judgment. *See id.* However, when the state asserts and supports with

evidence that the trial court lacks subject matter jurisdiction, a plaintiff, when the facts underlying the merits and subject matter jurisdiction are intertwined, must show that there is a disputed material fact regarding the jurisdictional issue.

When reviewing a plea to the jurisdiction in which the pleadings requirement has been met and evidence has been submitted to support the plea that implicates the merits of the case, we take as true all evidence favorable to the nonmovant and indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Id.* at 228.

## B. Discussion

### 1. Waiver of Immunity Under Local Government Code Section 271.152

When performing governmental functions, political subdivisions derive governmental immunity from the state's sovereign immunity. *City of Houston v. Williams*, 353 S.W.3d 128, 134 (Tex. 2011). Under the common-law doctrine of sovereign immunity, the sovereign cannot be sued without its consent. *Id.*

Like sovereign immunity, governmental immunity can be waived by statute. *Id.* The Legislature has made clear that a statute shall not be construed as a waiver of immunity unless it is effected by "clear and unambiguous language." TEX. GOV'T CODE ANN. § 311.034 (West, Westlaw through 2017 1st C.S.).

Section 271.152 of the local government code waives immunity to suit for qualifying local governmental entities for purposes of adjudicating a claim for breach of contract entered into by the local governmental entity. TEX. LOC. GOV'T CODE ANN. § 271.152 (West, Westlaw through 2017 1st C.S.); *see City of Houston*, 353 S.W.3d at 134. For the waiver of immunity under section 271.152 to apply, three elements must be established: (1) the party against whom the waiver is asserted must be a local governmental entity as defined

6

by the local government code, (2) the entity must be authorized by statute or the Constitution to enter into contracts, and (3) the entity must in fact have entered into a contract that is defined by local government code section 271.151(2). *See* TEX. LOC. GOV'T CODE ANN. §§ 271.151(2); 271.152; *City of Houston*, 353 at 135. Relevant to the issue of waiver of immunity, a contract is defined as "a written contract stating the essential terms of the agreement for providing goods or services to the local governmental entity that is properly executed on behalf of the local governmental entity." *See id.* at 135 (citing TEX. LOC. GOV'T CODE ANN. § 271.151(2) (West, Westlaw through 2017 1st C.S.) (defining a "contract" for purposes of waiving immunity under this subchapter)).

The parties in this case solely focus on whether Diaz can establish the third element for waiver to apply under section 271.152. The third element "effectively states five elements a contract must meet for it to be a contract subject to section 271.152's waiver of immunity: (1) the contract must be in writing, (2) state the essential terms of the agreement, (3) provide for goods or services, (4) to the local governmental entity, and (5) be executed on behalf of the local governmental entity." *City of Houston*, 353 S.W.3d at 135.

Diaz argues on appeal that he has satisfied his burden to establish the third element that he and the City of Elsa entered into a contract as defined by section 271.151(2). On the other hand, the City of Elsa argues that Diaz fails to establish that they entered into a contract under section 271.151(2). To decide this issue, we turn to the purported contract, referred to in this opinion as the Mesa Letter.

7

## 2. The Mesa Letter as a Unilateral Contract

Prior to delving into a section 271.151(2) analysis, we must preliminarily discuss the law of unilateral contracts. Unilateral contracts are created when a promisor promises a benefit if a promisee performs, and the contract becomes enforceable when the promisee performs. *See Vanegas v. Am. Energy Servs.*, 302 S.W.3d 299, 302 (Tex. 2009). Therefore, a unilateral employment contract is created when an employer promises an employee certain benefits in exchange for the employee's performance, and the employee performs. *City of Houston*, 353 S.W.3d at 136.

We now turn to the Mesa Letter and whether it meets the five elements of a contract to make section 271.152's waiver apply.

First, the Mesa Letter comprises a contract and that contract is in writing. A promise, the acceptance of which forms a contract, is a manifestation of intention to act or refrain from acting in a specified way, so made as to justify a promisee in understanding that a commitment has been made. *Id.* at 138 (citing *Montgomery Cty. Hosp. Dist. v. Brown*, 965 S.W.2d 501, 502 (Tex. 1998)). The Mesa Letter unambiguously and clearly expresses a manifestation of intent by Mesa, as the city manager and acting on its behalf,[1] to appoint Diaz as its interim chief of police in exchange for a salary increase to what was budgeted for the chief of police position and until such position became filled. The letter further shows that the City intended for Diaz's appointment to be temporary; that he was invited to formally apply to become the permanent chief; and that if he was not ultimately selected as the permanent chief, he would be allowed to assume his former position as

---

[1] Diaz alleged in his petition that by authority granted under an Elsa city ordinance, the City of Elsa delegated to the city manager the authority to appoint and remove the City's chief of police. Diaz further alleged that Mesa exercised his authority under this ordinance and acted on behalf of the City in doing so.

8

warrants officer and his pay would be readjusted to that previous level. These sets of promises by the City of Elsa constituted offers that were communicated to Diaz, who accepted by performing. *See City of Houston*, 353 S.W.3d at 136. Specifically, because the City's offers required acceptance by performance, the Mesa Letter was a unilateral contract that became binding when Diaz performed the duties of police chief, which the record undisputedly shows that he did. *See id.* Thus, the City's promises of higher pay and restoration of Diaz's previous position and pay grade if he was no longer the chief of police became binding. Furthermore, the unilateral contract is in writing.

Second, the Mesa Letter states the essential terms of the agreement between Diaz and the City of Elsa. The Texas Supreme Court has described "essential terms" of a contract as "the time of performance, the price to be paid, and the service to be rendered." *Kirby Lake Dev., Ltd. v. Clear Lake City Water Auth.*, 320 S.W.3d 829, 838 (Tex. 2010). In the context of employment agreements, typical essential terms include "compensation, duties, or responsibilities." *City of Houston*, 353 S.W.3d at 139. The Mesa Letter states the time for performance by indicating that Diaz's appointment was "effective immediately" and that Mesa expected to open the chief of police position "within the next 60 days" by inviting him to apply. Furthermore, the Mesa Letter states that Diaz's pay would be increased to the level budgeted for the police chief, and that if he did not become the permanent police chief, his position and salary as warrants officer would be restored. Lastly, the Mesa Letter states that Diaz's duties and responsibilities would be to serve in the position of interim chief of police.

Third, the Mesa Letter provides for goods or services. "Services" under section 271.151(2) has been construed broadly "to encompass a wide array of activities" and

9

includes "any act performed for the benefit of another under some arrangement or agreement whereby such act was to have been performed." *Kirby Lake*, 320 S.W.3d at 839. Mesa testified that prior to Diaz's appointment, the City received notice from the Texas Commission on Law Enforcement that its previous chief of police (Diaz's predecessor) did not hold the credentials required by the State of Texas. According to Mesa, the City's non-compliance with state credentialing standards would have resulted in daily civil penalties until the City became compliant. In his letter to Diaz, Mesa specifically highlighted Diaz's law enforcement credentials and performance as a police officer as a reason for his appointment to serve as chief of police. Thus, the City benefitted from Diaz's appointment because it became compliant with state standards and allowed it to avoid any civil penalties.

Fourth, the services were provided to a local governmental entity. It is undisputed that Diaz's services as interim police chief were rendered to the City of Elsa, a local governmental entity. *See* TEX. LOC. GOV'T CODE ANN. § 271.151(3)(A).

Fifth and finally, the Mesa Letter was executed by the City. In its briefing to this Court, the City of Elsa argues that the Mesa Letter was not executed by the City "at a lawfully convened meeting pursuant to the Texas Open Meetings Act" and because it was not approved at an official meeting by the Elsa City Council, the contract was not properly executed. We disagree. Section 271.152(2) does not define the term "executed." However, the Texas Supreme Court has explained that "executed" has "several definitions" and it means to "finish" or "make complete." *Mid-Cont. Cas. Co. v. Global Enercom Mgmt., Inc.*, 323 S.W.3d 151, 157 (Tex. 2010) (per curiam). First, we note that the Mesa Letter was signed by Mesa in his official capacity as the city manager of Elsa.

10

Next, the record shows that Juan Cedillo—Mesa's successor as Elsa's city manager who terminated Diaz—acknowledged that Diaz had a written contract with the City and that the Elsa City Council also understood that to be the case as well. Cedillo also acknowledged that Mesa acted within his authority as city manager to enter into the contract with Diaz. Furthermore, Cedillo testified that Elsa's city attorney and the city council acknowledged to him that Diaz had an employment contract with the city. Based on this evidence, we conclude that the Mesa Letter was executed by the City.

To summarize, the Mesa Letter meets each of the five elements required by section 271.151(2) of the local government code. Therefore, it is a unilateral employment contract between the City of Elsa and Diaz which falls within the scope of section 271.152's waiver of immunity. We sustain Diaz's sole issue.

### III.  CONCLUSION

We reverse the trial court's granting of the City of Elsa's plea to the jurisdiction and remand this case to the trial court for further proceedings consistent with this opinion.

GINA M. BENAVIDES,
Justice

Delivered and filed the
8th day of March, 2018.

11