AFFIRM; and Opinion Filed February 15, 2013.



In The

# Court of Appeals
# Fifth District of Texas at Dallas

---

## No. 05-11-00752-CV

---

### MARYAM PARVIZ-KHYAVI, PH.D., Appellant

### V.

### ALCON LABORATORIES, INC. AND AETNA LIFE INSURANCE COMPANY, Appellees

---

### On Appeal from the County Court at Law No. 4
### Dallas County, Texas
### Trial Court Cause No. CC-10-03942-D

---

## OPINION

Before Justices Francis and Murphy[1]
Opinion By Justice Murphy

Maryam Parviz-Khyavi, Ph.D. appeals the summary judgment granted in favor of Alcon Laboratories, Inc. and Aetna Life Insurance Company on her claims for short-term disability (STD) benefits. In three issues, she claims the trial court erred because: (1) Alcon's offer of employment, together with its disability benefit guideline, formed a unilateral contract that became binding when she began work; (2) she was a third-party beneficiary to Aetna's contract with Alcon to administer the disability income program; and (3) the judgment granted relief for Aetna on Parviz-Khyavi's

---

[1] Justice Joseph Morris was on the panel and participated at the submission of this case. Due to his retirement on December 31, 2012, he did not participate in the issuance of this Opinion. *See* TEX. R. APP. P. 41.1(a), (b).

Deceptive Trade Practices Act (DTPA) claim when Aetna did not seek summary judgment on that claim. We affirm.

## BACKGROUND

Parviz-Khyavi was employed by Alcon as a senior scientist pursuant to an August 27, 2007 written offer of employment, which was signed by her and required her to begin employment no later than September 10, 2007. Over a year later, beginning January 26, 2009, Parviz-Khyavi was absent from work due to a disabling illness. She filed a claim for STD income benefits, which Aetna approved for the period February 2 through April 15, 2009. A few months later, on July 16, 2009, Parviz-Khyavi again began an absence from work asserting the same illness, and she filed another claim for STD income benefits. Aetna denied that claim by letter dated September 8, 2009, stating that the information received from the doctor did not support a disability.

Parviz-Khyavi sued Alcon and Aetna for breach of contract based on the denial of her disability claim. Citing *Vanegas v. American Energy Services*, 302 S.W.3d 299 (Tex. 2009) in her petition, she alleged she had an enforceable unilateral contract based on Alcon's STD program and that she was a third-party beneficiary of Aetna's contract with Alcon to administer the benefits. She also brought an additional claim against Aetna under the DTPA for "unconscionable action," which she later nonsuited pursuant to her second amended petition.

Alcon and Aetna filed a joint motion for summary judgment on Parviz-Khyavi's breach of contract claims, arguing she had no contract rights to STD benefits. The trial court granted the motion, and Parviz-Khyavi appeals that judgment.

## DISCUSSION

### STANDARD OF REVIEW

We review Alcon and Aetna's summary judgment de novo to determine if they proved their

–2–

right to prevail as a matter of law. *See* TEX. R. CIV. P. 166a(c); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex. 1985). They bore the burden to demonstrate that no genuine issues of material fact exist and they are entitled to judgment as a matter of law. *See Nixon*, 690 S.W.2d at 548. A matter is conclusively established for summary-judgment purposes if ordinary minds cannot differ on the conclusion to be drawn from the evidence. *AN Collision Ctr. of Addison, Inc. v. Town of Addison*, 310 S.W.3d 191, 193 (Tex. App.—Dallas 2010, no pet.). In our review, we take as true evidence favorable to Parviz-Khyavi, the non-movant, indulging every reasonable inference and resolving any doubts in her favor. *Nixon*, 690 S.W.2d at 548–49. As defendants moving for summary judgment, Alcon and Aetna were required to negate at least one essential element of Parviz-Khyavi's causes of action or conclusively prove every element of an affirmative defense. *See Am. Tobacco Co. v. Grinnell*, 951 S.W.2d 420, 425 (Tex. 1997).

Our appellate review of the summary judgment is limited to those issues presented to the trial court. *See* TEX. R. CIV. P. 166a(c) (stating issues not expressly presented to trial court in writing shall not be considered on appeal as grounds for reversal); *Stiles v. Resolution Trust Corp.*, 867 S.W.2d 24, 26 (Tex. 1993) (holding that summary judgment cannot be affirmed on grounds not expressly set out in the motion or response). When, as here, the trial court's order granting summary judgment does not specify the basis for the ruling, we will affirm the judgment if any of the theories presented to the trial court and preserved for appellate review are meritorious. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 216 (Tex. 2003).

## ANALYSIS

### *Breach of Contract*

Alcon and Aetna claimed as grounds for summary judgment that Parviz-Khyavi's contract claims fail as a matter of law because she has no enforceable contract rights. They argued the STD

–3–

Program Guideline negates any contract because Alcon expressly retained the discretionary right to interpret the STD Program Guideline and the right to change or end the STD program without consent of employees; it also expressly disclaimed creation of any insurance or contract rights. Additionally, they contended *Vanegas*, cited by Parviz-Khyavi as the basis for her unilateral contract claim, is inapplicable because "there was no specific promise that was accepted by performance."

Parviz-Khyavi responded to the summary-judgment motion, arguing that the offer letter promised "certain company benefits" and, read with the STD Program Guideline, established a unilateral contract when she performed services. She asserted the disclaimer applied only to a bilateral contract. She did not address Alcon and Aetna's argument that there was no specific promise that was accepted by Parviz-Khyavi.

Alcon and Aetna contend on appeal, as they did below, they negated an essential element of Parviz-Khyavi's contract claim by showing no contract was created. In contrast, Parviz-Khyavi asserts Alcon and Aetna's only summary-judgment argument is based on disclaimer, which is an affirmative defense. All parties agree, however, the question of whether a unilateral contract was formed is a question of law. Similarly, they rely on the same two documents for their contract arguments and contend any intent is derived from those documents. That is where we begin our analysis.

The first document is the offer letter dated August 27, 2007. The first paragraph of the offer letter signed by Parviz-Khyavi stated:

> We are pleased about your joining Alcon. This letter serves as a formal confirmation of our verbal offer to you for the position of Sr. Scientist I. The following paragraphs outline your initial pay and benefits package. Of course, pay and benefits may be modified or adjusted during the course of your employment.

-4-

The letter then included bullet points outlining the initial pay, details of the Alcon 401(k) Plan and the Alcon Retirement and Savings Program, a one-time incentive payment, paid time off allowable in 2008, coverage for relocation expense, and the requirement that Parviz-Khyavi provide a signed W-4 and possibly a signed agreement for non-disclosure of proprietary information. The letter included additional paragraphs notifying Parviz-Khyavi the offer of employment was contingent upon Alcon's receipt of various information, including background screening, drug tests, satisfactory business references, background checks, tuberculosis screening, and her availability to begin employment no later than September 10, 2007.

The paragraph of the letter on which Parviz-Khyavi's unilateral contract claim is based was one of the general paragraphs about halfway through the letter (not one of the first-page bullet points outlining her specific pay and identified benefits), which provided in its entirety: "You will be eligible for all Company benefits normally accorded employees of similar length of service and status from your first day of employment." The letter never mentioned STD benefits and none of the attachments to the letter included a booklet, description, or guideline relating to STD benefits.

Just before the final paragraph of the four-page letter, which stated the offer would remain open until September 3, 2007, the letter contained the following statement:

> While this does serve the purpose of establishing a record of our understandings (terms and conditions of your employment with Alcon), this should not be considered or construed by you to be a formal employment contract since Alcon practice does not provide for formal employment contracts. An extra copy of this letter is enclosed for your records.

The second document the parties rely on for their arguments is an Alcon booklet entitled: "Short-Term Disability Income Program Policy Guideline." The first paragraph in the STD Program Guideline states that the program "is designed to provide you with temporary financial support after you suffer a disabling injury, illness or accident and help you get back to work as quickly as

-5-

possible." That introductory paragraph provides further that the program is administered by Aetna and emphasizes it is the applicant's "responsibility to properly apply for any STD benefit and to understand and cooperate in the Program's other important components." The booklet is twenty pages long and the final paragraph provides:

> This booklet does not guarantee employment or continued employment with Alcon nor deal in any way with employment issues. The STD Program is self-insured by Alcon and administered by Aetna. Alcon has the discretionary right to interpret these policy guidelines. Alcon reserves the right to change or end the STD Program at any time. This Program also should not be interpreted as a contract or insurance policy, and it does not create any rights to continuance of the Program in favor of Employees. Accordingly, the Program may be terminated, modified, suspended, or amended in whole or in part at any time without the consent of the Employees.

The parties devote most of their arguments to the legal effect of the disclaimers contained in the STD Program Guideline and the offer letter. We begin our analysis, however, with Alcon and Aetna's premise that Alcon never made "a specific promise that was capable of being accepted by performance," because resolution of that part of the first issue is dispositive. A unilateral employment contract for STD benefits was formed if Alcon promised Parviz-Khyavi those benefits in exchange for her performance, and she performed. *See City of Houston v. Williams*, 353 S.W.3d 128, 136 (Tex. 2011). An essential element of a unilateral employment contract is the promise of a benefit—here, a promise to provide Parviz-Khyavi STD benefits.

In *City of Houston*, the Texas Supreme Court addressed a unilateral employment contract between the City and its firefighters, noting that a promise that is sufficient to form a contract if accepted "is a manifestation of intention to act or refrain from acting in a specified way, so made as to justify a promisee in understanding that a commitment has been made." *Id.* at 138 (quoting *Montgomery County Hosp. Dist. v. Brown*, 965 S.W.2d 501, 502 (Tex. 1998) (quoting RESTATEMENT (SECOND) OF CONTRACTS § 2(1) (1981))). There, the court concluded language in ordinances providing that firefighters "shall" be entitled to, or "shall" receive, specific benefits,

–6–

including "specific compensation in the form of overtime pay and termination pay," satisfied the City's "manifestation of intention" to provide those benefits and that a unilateral contract was formed when the firefighters performed. *Id.* We thus must determine whether Alcon manifested its intention to provide Parviz-Khyavi STD benefits—that is, did it make a promise capable of being accepted by performance?

The offer letter, and specifically the language Parviz-Khyavi cites, provided: "You will be eligible for all Company benefits normally accorded employees of similar length of service and status from your first day of employment." The Austin Court of Appeals previously addressed similar language in a letter notifying an employee he would be "eligible" for annual bonuses and noted the language merely informed the employee of eligibility and did not guarantee a bonus. *See Wegner v. Dell Computer Corp.*, 03-99-00028-CV, 1999 WL 645086, at *4 (Tex. App.—Austin Aug. 26, 1999, no pet.) (not designated for publication). Contrast the statutory language in *City of Houston*—that firefighters "shall" be entitled to, and "shall" receive specific benefits—where the court concluded that language was mandatory and established entitlement to those benefits. *City of Houston*, 353 S.W.3d at 138. Parviz-Khyavi argues the "shall" language in *City of Houston* is comparable to the "will" language in the offer letter. Yet that argument does not address the distinction between the additional words "shall receive [specific benefits]" (which suggest entitlement to identified benefits) and the words "will be eligible [for company benefits]" (which suggest eligibility—no guarantee—for unidentified general benefits).

Similarly, in *Vanegas*, a case on which Parviz-Khyavi relies, the employer made a specific promise to pay five percent of the proceeds of a sale or merger of the company to those employees who were still employed at the time of the sale or merger. *Vanegas*, 302 S.W.3d at 300. Although the promise was illusory when made because the company could have avoided the promise by firing

–7–

the employees at any time, the promise became an enforceable unilateral contract for those employees who remained employed at the time of the sale. *Id.* at 303. *Vanegas* involved a concrete promise that was capable of being accepted by performance—payment of five percent of sale proceeds.

Contrast the specific promise in *Vanegas* with the offer letter to Parviz-Khyavi, which does not mention STD benefits and none of the attachments include documents related to STD benefits. Notably, Parviz-Khyavi's offer letter did list in bullet points Parviz-Khyavi's "initial pay and benefits package." And those bullet points stated her exact salary and detailed the "Alcon 401(k) Plan" and the "Alcon Retirement & Savings Program."

Considering only the general reference to company benefits on which Parviz-Khyavi relies and the express language of the offer letter and the STD Program Guideline denying the creation of any contract rights, we conclude those documents do not show Alcon's "manifestation of intention" to provide STD benefits, which could be accepted by Parviz-Khyavi's beginning work. *See generally City of Houston*, 353 S.W.3d at 140 (distinguishing between disclaimer of a vested right to compensation and disclaimer of contractual intent); RESTATEMENT (SECOND) OF CONTRACTS § 21 (1981) (noting manifestation of intention that promise shall not affect legal relations may prevent formation of contract).

Parviz-Khyavi does not contend that either the offer letter or the STD Program Guideline standing alone provides the basis for a unilateral contract. She contends instead that we may, as a matter of law, determine that multiple documents comprise a single, written contract, and Alcon's written offer of employment and the STD Program Guideline must be read together to ascertain the parties' intent. *See Fort Worth Indep. Sch. Dist. v. City of Fort Worth*, 22 S.W.3d 831, 840 (Tex. 2000) (multiple documents can compose a single, written contract). Under this theory, Parviz-

-8-

Khyavi argues Alcon's "offer of disability income benefits," although illusory when made, was accepted by her performance, thus becoming a binding and enforceable unilateral contract. While Parviz-Khyavi concedes the offer letter alone does not create a promise capable of being accepted, she argues the STD Program Guideline also was part of the offer. According to her, when both the letter and the guideline are viewed together, they guaranteed her STD benefits. To accept Parviz-Khyavi's reasoning, we would have to conclude the STD Program Guideline was part of the offer and that it provided a guarantee of STD benefits.

In an employment-at-will situation under Texas law, "an employee policy handbook or manual does not, of itself, constitute a binding contract for the benefits and policies stated unless the manual uses language clearly indicating an intent to do so." *Gamble v. Gregg County*, 932 S.W.2d 253, 255 (Tex. App.—Texarkana 1996, no writ) (citations omitted). An employee handbook also does not "create property interests in stated benefits and policies unless some specific agreement, statute, or rule creates such an interest." *Id.*; *Werden v. Nueces County Hosp. Dist.*, 28 S.W.3d 649, 651 (Tex. App.—Corpus Christi 2000, no pet.). The rule applies to all forms of employment manuals. *Day & Zimmerman, Inc. v. Hatridge*, 831 S.W.2d 65, 69 (Tex. App.—Texarkana 1992, writ denied). This is particularly true where an employee acknowledges the nature of the document as non-contractual. *See Drake v. Wilson N. Jones Med. Ctr.*, 259 S.W.3d 386, 390 (Tex. App.—Dallas 2008, pet. denied) (noting at-will employee's signed acknowledgment that employer handbooks could not be construed as contractual in nature demonstrated clear intent not to create rights).

The STD Program Guideline emphasizes Alcon's employees are at-will; Alcon has the discretionary right to interpret, change, or end STD benefits at any time; the booklet or program should not be interpreted as a contract and does not create any rights in favor of employees; and

Alcon may terminate, modify, suspend, or amend all or part of the program without consent of any employee. The booklet contains no language suggesting it is part of any employment offer and states that it does not create any rights in favor of employees. And as referenced repeatedly, the offer letter does not mention the STD Program Guideline or any STD benefits and Parviz-Khyavi does not claim the document was provided to her as part of the offer letter, negotiations, or otherwise identified as part of her stated benefits. Her argument suggests she did not see the document prior to litigation. While we recognize that documents that are part of the same transaction may be read together to create a contract as a matter of law, *see, e.g., Ft. Worth Indep. Sch. Dist.*, 22 S.W.3d at 840, given the language of the offer letter and the STD Program Guideline, we cannot determine such intent based on these documents.

Parviz-Khyavi argues the absence of language excluding the booklet as part of Alcon's offer of employment should be interpreted as making the booklet part of the offer. That is not the test. Instead, Parviz-Khyavi must show the documents she relies on demonstrate a manifestation of Alcon's intention to be bound to provide STD benefits. *See City of Houston*, 353 S.W.3d at 138. The absence of such manifestation of intention is buttressed by language in both the offer letter and the STD Program Guideline negating any intent to create a contract. We conclude on this record that Parviz-Khyavi has not shown that the offer letter and the STD Program Guideline, read singularly or together, created a promise regarding STD benefits capable of forming a unilateral contract when she began work. *See id.; Gamble*, 932 S.W.2d at 255.

Having concluded Parviz-Khyavi has not shown a specific promise capable of being accepted through her performance, Parviz-Khyavi's contract claim, which is the only basis urged for enforcing STD benefits, fails. The trial court did not err in granting summary judgment as to that claim. We overrule her first issue. Based on this resolution, we need not address whether the disclaimer

language has independent legal significance and emphasize that this decision is restricted to the record and arguments of the parties. Because Parviz-Khyavi's breach of contract claim against Aetna is dependent on the validity of her contractual right to STD benefits under her unilateral contract theory, as agreed by Parviz-Khyavi at submission, we do not reach her second issue regarding administration of those benefits. *See* TEX. R. APP. P. 47.1.

### *DTPA Claim—Aetna*

Parviz-Khyavi contends in her third issue that the trial court erred in dismissing her DTPA claim against Aetna, which was not challenged in the summary-judgment motion. She agues that the trial court's take-nothing judgment dismissed her DTPA claim. Yet Parviz-Khyavi nonsuited her DTPA claim pursuant to her second amended petition in which she noted that "[a]t this time, Dr. Parviz-Khyavi withdraws, without prejudice, her claim against Aetna for violation of the Texas Deceptive Trade Practices - Consumer Protection Act." We overrule her third issue.

### CONCLUSION

The trial court did not err in granting summary judgment on Parviz-Khyavi's breach of contract claims. She failed to show a promise by Alcon capable of being accepted by performance and her breach of contract claim against Aetna was dependent on a unilateral contract with Alcon. She also nonsuited her DTPA claim against Aetna. The question of whether the trial court properly granted a "take-nothing" judgment at a time when the DTPA claim was still pending therefore is not before us for review. We affirm the trial court's judgment.

_____
MARY MURPHY
JUSTICE

110752F.P05

–11–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

MARYAM PARVIZ-KHYAVI, PH.D,
Appellant

No. 05-11-00752-CV      V.

ALCON LABORATORIES, INC. AND
AETNA LIFE INSURANCE COMPANY,
Appellees

Appeal from the County Court at Law No. 4
of Dallas County, Texas. (Tr.Ct.No. CC-10-03942-D).
Opinion delivered by Justice Murphy,
Justices Francis and Murphy participating.

      In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**. It is **ORDERED** that appellees Alcon Laboratories, Inc. and Aetna Life Insurance Company recover their costs of this appeal from appellant Maryam Parviz-Khyavi, Ph.D.


Judgment entered February 15, 2013.


_____
MARY MURPHY
JUSTICE