**REVERSE and REMAND; and Opinion Filed December 29, 2016.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-15-01449-CV

### DONALD VIDETICH, Appellant
### V.
### TRANSPORT WORKERS UNION OF AMERICA, AFL-CIO, Appellee

**On Appeal from the 134th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-14-03751**

## MEMORANDUM OPINION

Before Justices Myers, Evans, and Schenck
Opinion by Justice Schenck

Donald Videtich appeals from the trial court's grant of summary judgment against him on his claim for breach of contract against Transport Workers Union of America ("TWU"). He argues (i) TWU's Sick Leave & Short-Term Disability Policy ("Disability Policy") transformed the at-will status of his employment and guaranteed him short-term disability benefits and continued employment for twelve months; and (ii) he was not required to seek administrative remedies to receive short-term disability benefits and continued employment. We reverse and remand. Because all issues are settled in law, we issue this memorandum opinion. TEX. R. APP. P. 47.4.

### FACTUAL AND PROCEDURAL BACKGROUND

TWU is a national labor organization that represents workers primarily in the railroad, airline, and bus transportation industries. TWU employed Videtich as its Deputy Director of the

Air Transport Division and as the American Airlines System Coordinator. In February 2012, TWU revised its Disability Policy to include the following provision under the heading Return to Work Following Disability Leave: "An employee on sick leave or disability leave will continue to be an employee with TWU for . . . twelve (12) consecutive months from the last day worked prior to commencing the leave . . . ." The Disability Policy also included under the heading General Policy Requirements and Procedures a statement that "[a]n employee receiving TWU-paid leave under this policy will no longer be eligible to receive such paid leave if for any reason he/she ceases to be an employee of TWU."

In July 2013, Videtich had surgery on his knee and was later diagnosed with necrosis and nerve damage. According to Videtich, he took sick leave on August 13, 2013, and he began receiving short-term disability payments from TWU on October 3, 2013. TWU terminated Videtich's employment on November 1, 2013.

Videtich's attorney sent a demand letter to TWU's general counsel, asserting Videtich's rights to short-term disability payments and continued employment under the Disability Policy. TWU's general counsel responded to Videtich's counsel's letter, informing him the letter would be forwarded to the TWU International Secretary Treasurer for submission to the TWU International Administrative Committee ("IAC") for review of the decision to terminate Videtich's employment and his short-term disability payments. The IAC issued a written decision, in which it found (i) Videtich was not eligible for benefits because he had been terminated, (ii) he was not on sick leave or disability leave when he was dismissed, and (iii) the Disability Policy did not prevent TWU from terminating an employee, but instead provided an employee on sick leave or disability leave with the opportunity to return to work for twelve months following the last day worked after commencement of leave even if the employee had exhausted the 180 days provided by the Disability Policy for short-term disability benefits. The

IAC's decision also advised Videtich of his right to appeal the IAC's decision to the TWU International Executive Council ("IEC"). Videtich did not pursue an appeal of the IAC's decision to the IEC.

Videtich filed suit against TWU and several of its officers for breach of contract, breach of fiduciary duty, violations of the Texas Property Code, and attorney's fees. He later amended his petition to exclude the TWU officers and all claims except for his claim for breach of contract. TWU filed a traditional motion for summary judgment, arguing Videtich's suit should be dismissed on several grounds. The trial court granted TWU's motion for summary judgment without specifying which grounds the motion was granted on and entered a final judgment.

## STANDARD OF REVIEW

We review a trial court's summary judgment de novo. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). The movant for a traditional summary judgment has the burden of showing there is no genuine issue of material fact and that it is entitled to summary judgment as a matter of law. TEX. R. CIV. P. 166a(c). A defendant who conclusively negates at least one of the essential elements of a cause of action or conclusively establishes an affirmative defense is entitled to summary judgment. *Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 508 (Tex. 2010). In reviewing a summary judgment, we consider the evidence in the light most favorable to the non-movant and resolve any doubt in the non-movant's favor. *W. Invs., Inc. v. Urena*, 162 S.W.3d 547, 550 (Tex. 2005). When, as here, the trial court does not specify the basis for its summary judgment, the appealing party must show it is error to base it on any ground asserted in the motion. *Star-Telegram, Inc. v. Doe*, 915 S.W.2d 471, 473 (Tex. 1995). We must affirm the summary judgment if any one of the movant's theories has merit. *Id.*

DISCUSSION

TWU raised several grounds in its traditional motion for summary judgment, all of which Videtich addressed in his briefs on appeal. First, TWU contended Videtich's employment relationship with TWU was at-will and that its Disability Policy terms, when harmonized, did not alter the relationship between the parties. Second, TWU argued Videtich was not eligible for Disability Policy benefits. Thus, TWU's termination of Videtich's employment was lawful and could not constitute a breach of contract. Third, TWU contended its Disability Policy did not constitute a bilateral or unilateral contract to guarantee Videtich any benefits once his employment ceased. Fourth, TWU argued in the alternative that, even assuming a contract had been formed, Videtich was bound by the "final and binding" decision of the IAC. Fifth, TWU asserted in the alternative that, even assuming a contract had been formed, Videtich's claims were barred because he failed to exhaust available remedies under the TWU Constitution before filing his lawsuit.[1]

I.      At-Will Employment

Videtich contends TWU's Disability Policy altered his at-will status by providing for continued employment for up to twelve months provided he remained disabled. TWU responds that under Texas law, it is presumed that Videtich had an at-will employment relationship with TWU and that Videtich failed to prove otherwise. TWU also argues that its Disability Policy was never intended to alter the parties' at-will relationship and it was part of an employment manual that contained prominent and specific at-will disclaimers.

---

[1] Additionally, TWU contended in its motion for summary judgment that, to the extent Videtich claimed the Disability Policy was a policy of insurance or an employee benefit plan not exempt from coverage by the Employee Retirement Income Security Act ("ERISA"), his claims were completely preempted by ERISA. However, TWU provided no further argument or evidence to establish ERISA's coverage of the Disability Policy. The supreme court has held this argument is an affirmative defense on which the employer bears the burden of proof. *See Colorado v. Tyco Valves & Controls, L.P.*, 432 S.W.3d 885, 889–90 (Tex. 2014). Videtich addressed this argument at the trial court and on appeal, contending TWU's policy was not an ERISA plan subject to preemption but failed to cite the record to support his argument. In any event, because TWU failed to conclusively establish this affirmative defense, we do not consider it as a ground on which to affirm the summary judgment. *See Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 508 (Tex. 2010).

The long-standing rule in Texas provides for employment at will, terminable at any time by either party, with or without cause, absent an express agreement to the contrary. *Fed. Exp. Corp. v. Dutschmann*, 846 S.W.2d 282, 283 (Tex. 1993). In an employment-at-will situation, an employee handbook or manual does not, of itself, constitute a binding contract for the benefits and policies stated unless the manual uses language clearly indicating an intent to do so. *Parviz-Khyavi v. Alcon Labs., Inc.*, 395 S.W.3d 376, 381–82 (Tex. App.—Dallas 2013, pet. denied). An employee handbook also does not create property interests in stated benefits and policies unless some specific agreement, statute, or rule creates such an interest. *Id.* at 382. A disclaimer in an employee handbook negates any implication that a personnel–procedures manual places a restriction on the employment-at-will relationship. *Dutschmann*, 846 S.W.2d at 283.

In *Parviz*, the employee relied upon an offer letter and the employer's handbook entitled Short-Term Disability Income Program Policy Guideline to argue she and her employer had entered into a contract under which she was entitled to disability benefits. *Parviz*, 395 S.W.3d at 379. The offer letter included paragraphs outlining the employee's initial pay and benefits package, stated such pay and benefits "may be modified or adjusted during the course of [her] employment," and stated "[y]ou will be eligible for all Company benefits normally accorded employees of similar length of service and status from your first day of employment." *Id.*

Here, the Disability Policy included the following provision under the heading Return to Work Following Disability Leave: "An employee on sick leave or disability leave will continue to be an employee with TWU for . . . twelve (12) consecutive months from the last day worked prior to commencing the leave . . . ." In *Parviz*, this court noted that "will be eligible" language suggested no guarantee but that "shall receive" language suggested entitlement to identified benefits. *Parviz*, 395 S.W.3d at 381. The language here appears to fall somewhere in between a non-guarantee and entitlement as those notions are described in *Parviz*.

The Disability Policy also included under the heading General Policy Requirements and Procedures a statement that "[a]n employee receiving TWU-paid leave under this policy will no longer be eligible to receive such paid leave if for any reason he/she ceases to be an employee of TWU." We note that the two provisions at issue in the Disability Policy are internally conflicting. Videtich argues the "possibly conflicting provisions in the policy" could be harmonized by reading an implied right of TWU to terminate an employee for just cause. It is true that when the provisions of a contract appear to conflict, we attempt to harmonize the two provisions and assume the parties intended every provision to have some effect. *United Protective Servs., Inc. v. W. Vill. Ltd. P'ship*, 180 S.W.3d 430, 432 (Tex. App.—Dallas 2005, no pet.). However, Videitch's harmonization ignores the provision's broad language of "if for ***any*** reason he/she ceases to be an employee."

TWU also argues any language in the Disability Policy that appeared to restrict TWU's ability to terminate Videtich at will would not be sufficient to do so because the Disability Policy was contained within an employee manual/handbook that contained specific at-will disclaimers. But review of the record reveals the Disability Policy was a standalone policy stored with several others on TWU's website, not in the same booklet or manual as in *Parviz* or *Dutschmann*, nor in a signed receipt for the handbook as in *Dutschmann*. *See Dutschmann*, 846 S.W.2d at 283; *Parviz*, 395 S.W.3d at 380. Moreover, the specific at-will disclaimers TWU references in its arguments are contained within letters written in 2007 and 2008, years before the 2012 revision to the Disability Policy that is at issue here.

In view of the patent ambiguity of the Disability Policy and the lack of any explicit disclaimer, we conclude a fact question exists concerning whether the Disability Policy expressly modified the employment-at-will relationship. Accordingly, we cannot affirm the trial court's summary judgment on this ground.

II.     Eligibility for Disability Policy Benefits

Videtich argues as part of his first issue that he accrued a right to short-term disability benefits because he was disabled and provided documentation from physicians that he was unable to work as a result of illness. TWU responds that Videtich met none of the eligibility requirements to receive short-term disability benefits. TWU contends Videtich was required to show the following to be eligible: full-time employment, an inability to work as a result of disability, an application for government disability benefits and assignment of any such benefits to TWU, remain on Disability Policy sick leave for 50 consecutive days, and not cease to be an employee of TWU "for any reason."

The record contains evidence from Videtich regarding his ability to work, application for government disability benefits, and length of sick leave. Videtich provided letters from his chiropractor and physician regarding his injuries and their recommendations that he continue in an off-work status until further notice. TWU points to evidence of Videtich's continued activity during the period he claims he was unable to work, including an affidavit from Videtich's supervisor, as well as reports, emails, and letters written by Videtich during the time he claimed to be unable to work. However, TWU does not point us to any definition of the phrase "unable to work" to support the notion—for summary judgment purposes at least—that responding to email, signing letters, or taking phone calls made Videtich able to work.

As for the requirement Videtich apply for government disability benefits, Videtich's affidavit indicates he applied for and received Social Security disability benefits, although he does not state when he applied for the benefits. Videtich's affidavit also indicates he began taking sick leave August 14, 2013, and that TWU began paying him STD benefits on October 3, 2013, which addresses the requirement he be on Disability Policy sick leave for 50 consecutive days. Considering the evidence in the light most favorable to Videtich, as our posture obliges us

to do, there are fact issues regarding (1) whether Videtich was unable to work, (2) whether he timely applied for government disability benefits and assigned them to TWU, and (3) whether he was on paid sick leave for 50 consecutive days and thus eligible to receive short-term disability benefits. *See Urena*, 162 S.W.3d at 550.

Finally, TWU does not dispute Videtich was a full-time employee, but does point to evidence in the record of Videtich's termination to support its assertion Videtich could no longer be eligible to receive short-term disability benefits once his employment ceased "for any reason." As discussed above, the Disability Policy provides under the heading General Policy Requirements and Procedures a statement that "[a]n employee receiving TWU-paid leave under this policy will no longer be eligible to receive such paid leave if for any reason he/she ceases to be an employee of TWU." We have already concluded above that the two provisions at issue in the Disability Policy are ambiguous. Given this ambiguity and the fact issues above, we cannot conclude the trial court properly granted summary judgment on this ground.

III.     Bilateral or Unilateral Contract for Benefits

TWU contends that no contract could be formed here because the alleged promise of benefits is illusory because it is contingent on a continued at-will employment relationship. TWU also contends no unilateral contract was formed because the alleged promise to limit TWU's ability to terminate the at-will relationship is not an offer Videtich actually accepted by performance as he was not eligible for short-term disability benefits. Videtich argues the elements of a bilateral contract are present in this case because he and TWU made mutual promises: Videtich agreed to provide services in exchange for TWU's agreement not to terminate his employment while on disability. He contends that once he became disabled, he was no longer an employee at will and was guaranteed to remain as an employee for a year for purposes of receiving benefits. In the alternative, he argues the Disability Policy was a unilateral

contract promising Videtich short-term disability benefits and a year of continued employment, which Videtich accepted by performing services for TWU.

An enforceable bilateral contract is one in which there are mutual promises between two parties to the contract, each party being both a promisor and a promisee. *Vanegas v. Am. Energy Servs.*, 302 S.W.3d 299, 302 (Tex. 2009). A unilateral contract, on the other hand, is created by the promisor promising a benefit if the promisee performs. *Id.* The unilateral contract becomes enforceable only when the promisee performs. *Id.* While Videtich argues that once he became disabled, he was no longer an at-will employee, the policy provides an employee must meet certain requirements to be eligible to receive short-term disability benefits. Accordingly, to form a bilateral contract, Videtich would have needed to both be an employee and meet the Disability Policy's eligibility requirements in exchange for TWU's promise to provide those benefits. As we discussed above, there are remaining fact questions as to whether Videtich was eligible to receive short-term disability benefits. Thus, here, too, is a fact issue of whether Videtich performed his promise to form a bilateral contract or actually accepted TWU's offer by performance to form a unilateral contract. Accordingly, we cannot affirm the summary judgment on this ground.

IV. "Final and Binding" Decision of the IAC

Videtich argues he was not required to seek any administrative remedies in response to TWU's ground that Videtich was bound by the "final and binding" decision of the IAC. TWU responds Videtich submitted this dispute to the IAC and thus bound himself to the finality of the IAC's decision.

The Disability Policy provides under the heading of General Policy Requirements and Procedures as follows.

> Questions or disputes regarding issues pertaining to or application of this Sick Leave and Short-Term Disability Policy may be presented by a TWU employee to

the International Administrative Committee for resolution by submitting the question or issue to the Office of the International Secretary Treasurer. The decision of the IAC is final and binding on all parties involved.

Videtich asserts that the Disability Policy provides for a permissive—not a mandatory—appeal to the IAC and that he sent his demand letter to TWU's general counsel, not to TWU's secretary treasurer for resolution before the IAC.

We note that the plain language of the Disability Policy indicates Videtich was permitted to present his dispute to the IAC, but he had to do so by submitting the dispute to the secretary treasurer. The record contains Videtich's demand letter to TWU's general counsel, not to the secretary treasurer, and the general counsel's response informing Videtich that his letter would be forwarded to the secretary treasurer for submission to the IAC. Thus, there is, at a minimum, a fact issue as to whether Videtich submitted or consented to the submission of his dispute to the secretary treasurer. We cannot affirm the summary judgment on this ground.

V.      Exhaustion of Available Remedies

TWU contends that Videtich failed to exhaust available remedies under the TWU Constitution before filing his lawsuit. Videtich argues the TWU Constitution expressly applies to members and that the language of its provision for appeals makes it clear the appeals process is for disputes among members. He avers that his complaints are in regards to his rights as an employee of TWU, not as a member.

TWU responds that Videtich was contractually required to exhaust internal TWU Constitutional appeals with respect to TWU's denial of his request for short-term disability benefits prior to filing this lawsuit. TWU argues Videtich was required to comply with the exhaustion of remedies provision because Videtich was appointed, or hired, pursuant to the TWU Constitution by a previous International President and because through his oath of membership to TWU, Videtich contractually agreed to abide by the TWU Constitution.

–10–

Article V of the TWU Constitution provides that the International President "shall have the authority to appoint, direct, suspend or remove such organizers and representatives as he/she may deem necessary, and fix their compensation . . . ." Article XXIII of the TWU Constitution provides that "[a]ny member . . . aggrieved by any action, inaction, ruling, interpretation or decision of the International Union or of any International officer shall exhaust all available remedies provided by this Constitution before filing any legal proceeding concerning the matter in any court or other forum against the International Union . . . ." Article IV of the TWU Constitution defines "officers" to include the International President and the members of the IAC. Article IX, which sets forth the duties and powers of the IAC, provides that "[a]ny action or decision of the International Administrative Committee, and any practice or procedure established or prescribed by the International Administrative Committee, may be reversed or modified by the International Executive Committee or by the International Convention."

The record contains affidavits and appointment letters to establish Videtich was appointed, or hired, by the then-International President. Record evidence establishes that the International President and the IAC decided to make reductions in staff employees, that the IAC instructed TWU Air Transportation Division Director Gary Drummond to terminate Videtich's TWU employment, and that Director Drummond did notify Videtich that he was released from his employment.

However, Videtich argues Article XXII of the TWU Constitution, which addresses appeals, makes clear that the appeals process relates to disputes among TWU members, and that Article XXIII makes no mention of resolution of disputes concerning employee compensation or benefits. Section 1 of Article XXII provides for the appointment of a Committee on Appeals, which "shall have the power to decide all appeals from Local Unions and their members in any matter relating to the application of this Constitution or the By-Laws of the Local Union."

–11–

Section 2 provides that "[a]ny member in good standing may, after exhausting available remedies in his/her Local Union, appeal to the International Union . . . ."

Whether a contract is ambiguous is a question of law for the court. *J.M. Davidson, Inc. v. Webster,* 128 S.W.3d 223, 229 (Tex. 2003). A contract is not ambiguous if it can be given a definite or certain legal meaning. *Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.,* 940 S.W.2d 587, 589 (Tex. 1996). When construing a written contract, the primary concern of the court is to ascertain the true intentions of the parties as expressed in the instrument. *Webster,* 128 S.W.3d at 229. A contract, however, is ambiguous when its meaning is uncertain and doubtful or when it is reasonably susceptible to more than one meaning. *Coker v. Coker,* 650 S.W.2d 391, 393 (Tex. 1983). When the provisions of a contract appear to conflict, we will attempt to harmonize the two provisions and assume the parties intended every provision to have some effect. *United Protective Services, Inc. v. W. Vill. Ltd. P'ship*, 180 S.W.3d 430, 432 (Tex. App.—Dallas 2005, no pet.). If we are unable to harmonize the provisions and give effect to all clauses, and the contract is susceptible to more than one reasonable interpretation, we will find the contract is ambiguous. *Id.*

When a contract contains an ambiguity, the granting of a motion for summary judgment is improper because the interpretation of the instrument becomes a fact issue. *Coker,* 650 S.W.2d at 394 (concluding an agreement was ambiguous on its own motion and reversing the trial court's grant of summary judgment). A court may conclude that a contract is ambiguous even in the absence of such a pleading by either party. *Hackberry Creek Country Club, Inc. v. Hackberry Creek Home Owners Ass'n,* 205 S.W.3d 46, 56 (Tex. App.—Dallas 2006, pet. denied).

We note that the provisions of the TWU Constitution requiring exhaustion of remedies and appeals from the IAC are broad, encompassing "any action, inaction, ruling, interpretation or

–12–

decision of the International Union or of any International officer" and "[a]ny action or decision of the International Administrative Committee," respectively. In contrast, the appeals provision addresses disputes regarding TWU's Constitution or a local union's by-laws and discusses "available remedies in [a member's] Local Union." It is unclear on this record whether the exhaustion of remedies provision was meant to apply to employment disputes, such as the application and effect of the Disability Policy, when the appeals process appears to apply only to disputes regarding TWU's Constitution or a local union's by-laws. Thus, TWU's Constitution is susceptible of more than one reasonable interpretation. We therefore conclude TWU's Constitution is ambiguous and the parties' intent regarding the issue of whether Videtich was required to exhaust all available remedies before filing this suit is a fact issue to be resolved by the trier of fact. We cannot affirm on this ground of the summary judgment.

## CONCLUSION

We reverse the trial court's order granting summary judgment in favor of TWU and remand this case to the trial court for further proceedings consistent with this opinion.

/David J. Schenck/
DAVID J. SCHENCK
JUSTICE

151449F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

DONALD VIDETICH, Appellant

No. 05-15-01449-CV      V.

TRANSPORT WORKERS UNION OF
AMERICA, AFL-CIO, Appellee

On Appeal from the 134th Judicial District
Court, Dallas County, Texas
Trial Court Cause No. DC-14-03751-G.
Opinion delivered by Justice Schenck,
Justices Myers and Evans participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **REVERSED** and this cause is **REMANDED** to the trial court for further proceedings consistent with this opinion.

It is **ORDERED** that appellant DONALD VIDETICH recover his costs of this appeal from appellee TRANSPORT WORKERS UNION OF AMERICA, AFL-CIO.

Judgment entered this 29th day of December, 2016.

–14–