**AFFIRMED and Opinion Filed December 29, 2022**



In The
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-21-00384-CV**

**NICHOLAS SCARSELLA, Appellant**
**V.**
**TEXSTARS, LLC, Appellee**

**On Appeal from the 160th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-20-05818**

## MEMORANDUM OPINION

Before Justices Myers, Carlyle, and Goldstein
Opinion by Justice Goldstein

Appellant Nicholas Scarsella appeals the trial court's summary judgment in favor of appellee Texstars, LLC (Texstars) on Scarsella's sole claim for breach of an employment agreement. We affirm. Because all issues are settled in law, we issue this memorandum opinion. *See* TEX. R. APP. P. 47.2(a).

## BACKGROUND

On March 5, 2018, Scarsella and Texstars entered into a letter agreement under which Scarsella became the president and CEO of Texstars. At the time, Texstars was a wholly owned subsidiary of Ascent Aerospace, LLC (Ascent). The agreement included various terms of Scarsella's employment, including his base

pay, certain benefits, performance-based bonus structure, and an additional bonus in the event of Texstars's acquisition by a third party. Scarsella served as the president of Texstars from March 2018 until October 2019, when Texstars was acquired by PPG Industries, Inc. (PPG). By letter dated November 4, 2019, Brent Wright, a corporate representative of PPG, notified Scarsella that PPG had decided to terminate his position effective February 1, 2020. Wright's letter stated that Scarsella would continue receiving his salary payments but that he was being relieved of his day-to-day duties. There was no mention of Scarsella's bonus.

On January 21, 2020, Scarsella emailed Wright inquiring about his 2019 performance bonus. Scarsella wrote that Texstars "delivered substantial improvements in 2019 over 2018" and had set aside a bonus pool of $375,000—including $194,000 for Scarsella—which was "clearly communicated during the due diligence process" of PPG's acquisition of Texstars. Wright responded that all of PPG's "compensation actions, including bonus payments" were being finalized. In March 2020, Texstars paid Scarsella a performance bonus in the amount of $68,751.84.

Scarsella filed this lawsuit in April 2020, asserting a single cause of action for breach of contract against Texstars.[1] Texstars generally denied the claim and asserted several affirmative defenses, including failure of a condition precedent and

---

[1] Scarsella also asserted a claim for tortious interference against PPG, but later nonsuited that claim.

–2–

accord and satisfaction. The parties thereafter filed cross-motions for summary judgment. The trial court granted Texstars's motion, denied Scarsella's motion, and ordered that Scarsella take nothing. This appeal followed.

## DISCUSSION

We review summary judgments de novo. *McKinney Millennium, LP v. Collin Cent. Appraisal Dist.*, 599 S.W.3d 57, 60 (Tex. App.—Dallas 2020, pet. denied). A movant for summary judgment bears the burden of establishing that there are no issues of material fact and it is entitled to judgment as a matter of law. *Id.* When the parties file cross-motions for summary judgment, each party bears that burden as to its own motion. *See id.* When the trial court grants one party's motion and denies the other's, we consider both motions, review the evidence presented by both sides, determine all issues presented, and render the judgment the trial court should have rendered. *Id.*

In three issues, Scarsella complains that the trial court erred in: (1) denying his motion for summary judgment as to his claim for breach of contract; (2) denying his motion for summary judgment as to Texstars's affirmative defenses; and (3) granting Texstars's motion.

When construing a contract, we must ascertain the true intentions of the parties as expressed in the writing itself. *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 333–34 (Tex. 2011). In identifying the parties' intent, we consider the entire writing and strive to harmonize and give effect to all

the provisions of the contract so that none will be rendered meaningless. *In re Whataburger Restaurants LLC*, 645 S.W.3d 188, 195 (Tex. 2022). We do not give controlling effect to any single provision; rather, we consider all provisions with reference to the whole instrument. *Id.*

The agreement[2] between Texstars and Scarsella includes the following provision regarding Scarsella's pay:

> **Base Salary and Bonus:**
>
> Your annual salary will be $275,000, paid in accordance with the Company's payroll policies. You will be eligible to earn an annual bonus, and your target bonus opportunity will be 50% of your base salary. The actual bonus payout can be higher or lower than the 50% target, depending on your individual performance and the Company's performance. For fiscal 2018 only (the Company is on a calendar year end), this bonus will be pro-rated based per your actual start date. All bonuses are paid in accordance with the Company's normal practices and are subject to your continued employment at the time of payment.

Scarsella argues that this language creates a unilateral contract between him and Texstars under which Texstars's obligation to pay the performance bonus is triggered by his performance. Texstars argues that this provision does not create a

---

[2] We note that part of the record was submitted under a seal pursuant to a sealing order. Specifically, in accordance with Rule 76a, on April 29, 2021, the trial court "ORDERED that, until further order from this Court or another court with competent jurisdiction, the Clerk seal (i) Exhibits B and C to the Declaration of Nicholas Scarsella attached to Plaintiff's Motion for-Summary Judgment, filed on September 18, 2020; (ii) Exhibits B and C to the Declaration of Nicholas Scarsella attached to Plaintiff's Amended Motion fer Summary Judgment, filed on February 4, 2021; (iii) Exhibits B and C to the Declaration of Nicholas Scarsella attached to Plaintiffs Response to Defendant's Motion for Summary Judgment, filed on March 24, 2021; and (iv) all future filings in this matter of Exhibits B and C to the Declaration of Nicholas Scarsella." The Agreement is Exhibit A to Scarsella's Declaration and as referenced is not subject to a sealing order, but has been filed with this Court along the referenced pleadings without authority under Rule 76a. To the extent pleadings and other exhibits have been filed with this Court under seal, beyond those two documents enumerated in the Permanent Sealing Order, such filing is contrary to Rule 76a. Therefore, we have treated the pleadings and documents not under seal as public court records and an order of correction will be issued in due course.

duty on its part to pay Scarsella a performance bonus and, to the extent it does, Texstars had discretion to determine the amount.

Texstars relies on *Parviz-Khyavi v. Alcon Labs., Inc.*, 395 S.W.3d 376, 381 (Tex. App.—Dallas 2013, pet. denied), and *Lewis v. Vitol, S.A.*, No. 01-05-00367-CV, 2006 WL 1767138, at *4 (Tex. App.—Houston [1st Dist.] June 29, 2006, no pet.). In *Parviz-Khyavi*, we considered whether an employee had a contractual right to short-term disability benefits under an agreement that stated: "You will be eligible for all Company benefits normally accorded employees of similar length of service and status from your first day of employment." *See id.* at 380. We concluded that this language did not create a unilateral contract because it "suggest[ed] eligibility" but "no guarantee" to the benefits and therefore did not constitute "a specific promise capable of being accepted through [the plaintiff's] performance." *See id.* at 381–82. In *Lewis*, the First Court of Appeals the court considered the following contract provision: "Mr. Lewis is eligible to receive a yearly bonus based on the various performance parameters considered by the company. The bonus is at the sole discretion of the management." *Id.* The court contrasted the bonus language to other provisions of the contract which stated that Lewis "will receive" various benefits and "is to receive" a retention fee. Construing these provisions together, the court held that unlike the benefits and retention-fee provisions, which were mandatory, the bonus provision gave the employer discretion over whether to pay Lewis a bonus. *See id.*

We agree that the contract at issue does not create a unilateral contract and gives Texstars discretion whether to pay a performance bonus to Scarsella and in what amount. The bonus provision of the agreement suggests Scarsella's eligibility to receive a performance bonus but does not guarantee it. *See Parviz-Khyavi*, 395 S.W.3d at 380–81. The above language stands in contrast to another bonus provision in the parties' agreement:

> **Sale Bonus Proceeds**:
>
> In the event that you are, and have been continuously, employed by Texstars at the time Ascent exits its ownership in Texstars (targeted by June 30th, 2019), you will receive a sale bonus at the time the Company is sold by Ascent. Assuming you are successful in achieving operating performance in line with the earnings power of the business, we would expect the Company's enterprise value to be $20 - $35 million at the time of sale (consistent with indications of interest we have received; for reference, Texstars was purchased by Hampson, the predecessor to Parent, for over $40 million). Your sale bonus will be a percentage of the net transaction proceeds (gross proceeds or enterprise value less any direct transactional expenses) derived from the transaction.

Unlike the performance bonus, the sale bonus uses the mandatory language "will receive."[3] Construing the two provisions together, we must assume the parties intended the performance bonus to be discretionary, not mandatory. *See Lewis*, 2006 WL 1767138, at *4.[4]

---

[3] We note that another distinction exists between the two bonus provisions. The sale bonus proceeds provision contains a chart allocating a range of Net Transaction Proceeds, a Sale Bonus Percentage and a Sale Bonus Proceeds at Top of Range whereas the performance bonus contains no similar amount or calculation.

[4] The sale bonus proceed provision is not at issue in this appeal.

The cases Scarsella relies on to reach the opposite conclusion are inapposite. In *Shanklin v. Columbia Mgmt. Advisors, L.L.C.*, the court cited the "traditional view" with respect to bonuses:

> [W]hen an employment contract does not guarantee a bonus in a fixed, nondiscretionary amount, and the bonus offered is "an incentive to encourage the employee to perform in accordance with the previously existing contract of employment," the "promise to pay a bonus is unenforceable for want of sufficient consideration, since the employee is only giving the same service it has already contracted with the employer to render.

No. CIV.A. H-07-2690, 2008 WL 4899631, at *12 (S.D. Tex. Nov. 12, 2008). The document at issue in *Shanklin* contained a "definite bonus formula" under which the employee would receive a fixed percentage (23% for the first four quarters and 7% for the next eight quarters) of revenue generated by his sales of certain investment products. *See id.* at *3. Similarly, *Jehling v. A.H. Belo Corp.*, which relied on *Shanklin*, involved a contract providing that the employee "will be eligible for a target bonus of $80,000 to be paid quarterly . . . [and] eligible to receive a 2% bonus of all revenue over goal to be paid quarterly." *Jehling v. A.H. Belo Corp.*, No. 3:11-CV-1258-B, 2013 WL 5803813, at *19 (N.D. Tex. Oct. 28, 2013).[5] In contrast, the parties' agreement here states that Scarsella's "target bonus *opportunity*" would be

---

[5] We note also that the statements from both *Shanklin* and *Jehling* on which Scarsella relies were made in dictum. In *Shanklin*, the court ultimately stated that it "cannot conclude as a matter of law that the [summary sheet] did—or did not—create a contract to pay an incentive bonus" because there was a fact question about whether another document, which stated that the employee could not receive the bonus after he was terminated, was incorporated into the summary sheet. *See Shanklin*, 2008 WL 4899631, at *13. In *Jehling*, the court stated that it "does not need to decide whether the [contract's] language was sufficient to form a unilateral contract" because the employee adduced no evidence that his rights to a bonus accrued before his termination. *See Jehling*, 2013 WL 5803813, at *19.

50% of his base salary, but could be higher or lower than that amount based on his performance and the company's performance.[6] The agreement therefore lacks a fixed bonus amount required to constitute an enforceable promise to pay a bonus. *See Shanklin*, 2008 WL 4899631, at \*13; *Jehling*, 2013 WL 5803813, at \*19.

Scarsella argues alternatively that his entitlement to a bonus accrued at the time Texstars was acquired by PPG. In his declaration in support of his summary-judgment motion, Scarsella stated that the board of directors of Texstars resolved in June 2019 to pay him $194,100 for his bonus that year and that this resolution was communicated both to him and to PPG. Scarsella attached an "employee census," dated September 1, 2019, which listed every employee of Texstars, along with the employee's base salary or wage and a bonus amount. The employee census has a line for Scarsella in which his bonus is listed as $194,100. Scarsella also attached a balance sheet of Texstars, which contains a line item for "ACCRUED MGMT INCENTIVE" in the amount of $252,339.95, the majority of which he argues was allocated for his bonus.

Texstars objected to these statements as conclusory, hearsay, and self-serving. Texstars argues that the trial court erred in overruling these objections and should be reversed on that ground. We decline to do so because, even if we credited all of

---

[6] The agreement also provides that "Ascent may, *within its discretion*, modify the terms and conditions of your employment and benefits" (emphasis added). The agreement therefore also fails to satisfy the second requirement of an enforceable contract to pay a bonus as stated in *Shanklin*. *See Shanklin* 2008 WL 4899631, at \*13 (to be enforceable, promise to pay bonus must be "in a fixed, *nondiscretionary* amount" (emphasis added)).

these statements, they would not obligate Texstars to pay Scarsella a bonus. The parties' agreement provides that "[a]ll bonuses are paid in accordance with [Texstars's] normal practices." The agreement provides that Texstars follows a calendar-year accounting period and the undisputed evidence showed that Texstars made its bonus decisions in February or March after the end of the calendar year. Nothing in the agreement supports the proposition that Texstars would make final decisions about the amount of a year-end bonus in the middle of the year or that any bonus decision made before the end of the calendar year would be final and irrevocable. Because Texstars had discretion to decide whether, and in what amount, to pay Scarsella a bonus, it also had discretion to reserve final decisions about bonus payments until after the close of its calendar year.

## CONCLUSION

The parties' agreement gave Texstars discretion to decide whether and in what amount to pay Scarsella a performance bonus. To the extent Texstars resolved to pay Scarsella a performance bonus for 2019 of $194,100 in June of that year, Texstars was not bound by that decision and could, within its discretion, alter the amount in its final determination. We conclude that because Texstars paid Scarsella a performance bonus for 2019 in the amount of $68,751.84, Texstars did not breach

the parties' agreement. We therefore overrule Scarsella's issues and affirm the trial court's judgment.[7]

/Bonnie Lee Goldstein/
BONNIE LEE GOLDSTEIN
JUSTICE

210384F.P05

---

[7] As our determination is dispositive, we do not reach the parties' issues regarding Texstars's affirmative defenses or its objections to the summary-judgment evidence. *See* TEX. R. APP. P. 47.1.



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

NICHOLAS SCARSELLA,
Appellant

No. 05-21-00384-CV        V.

TEXSTARS, LLC, Appellee

On Appeal from the 160th Judicial
District Court, Dallas County, Texas
Trial Court Cause No. DC-20-05818.
Opinion delivered by Justice
Goldstein. Justices Myers and
Carlyle participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee TEXSTARS, LLC recover its costs of this appeal from appellant NICHOLAS SCARSELLA.

Judgment entered this 29th day of December 2022.

–11–